Barbara HEAD and Ray Head,
Plaintiffs–Appellees,

v.

LITHONIA CORPORATION, INC., a
Foreign Corporation,
Defendant–Appellant.

No. 88–2595.

United States Court of Appeals,
Tenth Circuit.

Aug. 8, 1989.

Michael Parks, Stipe, Gossett, Stipe, Harper, Estes, McCune and Parks, McAlester, Okl., for plaintiffs-appellees.

Richard C. Honn, Rogers, Honn & Associates, Tulsa, Okl., for defendant-appellant.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Defendant Lithonia Corporation, Inc., appeals from a judgment on a jury verdict in favor of plaintiff Barbara Head in this diversity action based on products liability. An Oklahoma jury awarded plaintiff $100,-000 for the permanent injury she sustained when the reflector in one of defendant's lights fell and struck her on the head. Defendant now complains the court erred as a matter of law in denying its motion for directed verdict and abused its discretion in permitting plaintiff to amend the pretrial order shortly before trial, allowing plaintiff's expert to testify in an area outside of

his expertise, and admitting evidence based on data that is not reasonably relied upon by experts in the field. The first three assignments of error lack merit. However, because the district court failed to address defendant's objection to the introduction of certain medical testing without a proper foundation, we vacate the judgment and remand for a new trial.[1]

## I.

In November 1985, plaintiff was injured at work when the reflector portion of a hanging, fluorescent light fixture manufactured by defendant fell and struck her on the side of her head. Plaintiff was standing under the light while a fellow employee, who had released one end of the shade to remove the bulbs and check on a possible electrical problem, was attempting to fix the light. Though not knocked to the ground or unconscious, plaintiff felt a knot raised on the side of her head. She reported the incident to her employer three weeks later and visited the company doctor for treatment, complaining of headaches, dizziness, and occasional blackouts. Plaintiff was placed on medical leave and later terminated.

Plaintiff initiated this action alleging the quarter-turn fastener on the Lithonia light was defective in design and failed to properly secure the reflector in place in its grooved channel. The defect, she claimed, made the product unreasonably dangerous. Plaintiff sought damages of $1,250,000 for the permanent injuries to her head and neck. Her husband, Ray Head, alleged damages of $100,000 for loss of consortium.

At trial, plaintiff called Mr. Jack Geiger, an electrical engineer who was qualified as an expert witness, to establish the nature of the defect. Mr. Geiger concluded the fastener was unreasonably dangerous and could easily be replaced with a screw-type fastener. Plaintiff's medical expert, Dr. Michael Haugh, her treating neurologist,

testified by videotaped deposition and explained his conclusions based on patient's history, clinical exam, and various tests. Although the results of plaintiff's electroencephalogram (EEG), computerized axial tomography (CAT-scan), and clinical exam were normal, one test, topographical brain mapping, apparently pinpointed the location of her injury. On the basis of her history and the topographical brain map, Dr. Haugh concluded plaintiff suffered from post-concussive syndrome and prescribed certain medications to alleviate the headaches. A fellow employee, Doug Holbird, identified the light although he did not observe the accident. Lithonia defended the action with testimony from two mechanical engineers and a neurologist, each of whom controverted plaintiff's evidence. The jury returned a verdict for plaintiff and awarded her $100,000. Ray Head received no recovery.[2]

## II.

During the trial, plaintiff presented evidence of her neck and head injury by introducing the videotaped deposition of her treating neurologist, Dr. Haugh. Dr. Haugh described his clinical examination and findings, explained the neurological tests he administered, and related his observations about plaintiff's condition based on this history. Dr. Haugh described the topographical brain map test he performed which, he explained, was a computerized enhancement of the EEG, using stimulation techniques "to bring out abnormalities on the EEG." When plaintiff attempted to introduce exhibits representing the results of the topographical brain mapping test, defendant objected contending a proper foundation had not been offered for the test. After the jury watched the videotape, defendant renewed its objection to the court. The objection was overruled without explanation. Defendant now contends the court erred in permitting plaintiff to introduce the test results of topographical

1. Because of our disposition of this last issue, it is unnecessary for us to expound on our reasons for finding the other issues without merit or discuss the sufficiency of the evidence.

2. Ray Head is not a party in this appeal.

brain mapping without requiring plaintiff to establish the necessary foundation for the reliability of the test.

Rule 703 of the Federal Rules of Evidence states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Although the rule broadens the basis on which expert opinions may be offered "to bring the judicial practice into line with the practice of the experts themselves when not in court," the advisory notes caution:

> If it be feared that enlargement of permissible data may tend to break down the rules of exclusion unduly, notice should be taken that the rule requires that the facts or data "be of a type reasonably relied upon by experts in the particular field." The language would not warrant admitting in evidence the opinion of an "accidentologist" as to the point of impact in an automobile collision based on statements of bystanders, since this requirement is not satisfied.

■ The limitation that the facts and data "be of a type reasonably relied upon by experts in the field" provides a mechanism by which the court can evaluate the trustworthiness of the underlying data on which the expert relies. *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.,* 739 F.2d 1028, 1033 (5th Cir.1984). This approach does not mean that the expert's opinion must be generally accepted in the scientific community to be "sufficiently reliable and probative to support a jury finding." *Osburn v. Anchor Laboratories,* 825 F.2d 908, 915 (5th Cir.1987) (citations omitted). "What is necessary is that the expert arrived at his ... opinion by relying upon *methods* that other experts in his field would reasonably rely upon in forming their own, possibly different opinions, about what caused the patient's disease." *Id.*

Lithonia asserts that topographical brain mapping is not a method relied upon by other neurologists to establish the disorder of which plaintiff complained. During cross-examination, Lithonia asked Dr. Haugh if the American Academy of Neurology considered topographical brain mapping a medically accepted technique. Dr. Haugh responded: "The technique at the present time has much controversy regarding it. And there have been pros and cons on both sides. And at the present time I'm not aware that the Academy has made a particular position on it."

While recognizing that the procedure may have gotten past the "experimental stage," Dr. Haugh was not able to explain the methodology in the clinical setting: "I do—I don't—I think in some ways it is and other ways it isn't at this time. That's a vague answer and I'm sorry, but that's the best I can do with that."

Dr. Haugh stated that all of his findings based on the clinical examination and test results were normal and did not substantiate plaintiff's complaint. Only when Dr. Haugh coupled plaintiff's topographical brain map with her medical history, was he able to conclude that patient suffered from post-concussive syndrome.

Through cross-examination, which is a useful tool for substantiating reliability, defense counsel elicited testimony that topographical brain mapping remained relatively experimental and was not accepted by other experts in the specialty of neurology or the American Academy of Neurology.[3]

---

**3.** When defendant attempted to question Dr. John Hastings, a neurologist who had examined plaintiff, on whether he performed a topographical brain map, plaintiff's counsel objected on the ground the pretrial order stated the neurologist would testify about his examination, diagnosis, and prognosis. Called to the bench, plaintiff's counsel explained his objection. "He asked him why he did not do a brain mapping, and I feel like he is going to criticize brain mapping. And here it was not set on here that he was going to criticize any of the tests that was [sic] given. It just says examination, diagnosis, and prognosis, and he has already done that." Defense counsel attempted to fit the testimony within the area of what the neurologist

Defendant properly placed the inquiry before the court. However, despite Lithonia's objection to the admission of both the hearsay statements, exhibits representing pictures of the brain map, and the statements based on this test, the district court made no inquiry into the reliability of the foundation of the expert's opinion to determine its admissibility. *See Soden v. Freightliner Corp.*, 714 F.2d 498, 502–503 (5th Cir.1983).

In *Barrel of Fun, Inc.*, 739 F.2d 1028, the Fifth Circuit vacated a judgment on the ground that expert testimony based solely on the results of a psychological stress evaluation (PSE) was inadmissible because the test itself was flawed. Likening the PSE results to those of a polygraph test, the court noted that plaintiff as the proponent of this scientific evidence "has the burden of showing as a predicate to its admission that the proffered test has achieved scientific acceptability and that the test has a reasonable measure of trustworthiness." *Id.* at 1032 (citation omitted). The Fifth Circuit found defendant State Farm had failed to meet that burden by simply stating the PSE test was used by the fire marshal's office.

In our case, plaintiff's counsel asked Dr. Haugh when he first began using topographical brain mapping. Dr. Haugh explained that he was the first neurologist to use the test in the Tulsa area and maintained the equipment in his office. Over defense objection, Dr. Haugh proceeded to offer his personal opinion of the value of the topographical brain mapping compared to "EEG traditional methods? Is one any better than the other, in your opinion?" Aside from his description of the actual test and this testimony, Dr. Haugh offered no other information on which the trier of fact could understand the reliability of the test, i.e., whether the scientific community has accepted the test.

■ Under Fed.R.Evid. 703 experts are given wide latitude to testify on facts otherwise not admissible in evidence and "to broaden the acceptable bases of expert opinion." *Merit Motors, Inc. v. Chrysler*

*Corp.*, 569 F.2d 666, 672–73 (D.C.Cir.1977). Implicit in the rule, however, is the court's guidance to "make a preliminary determination pursuant to Rule 104(a) whether the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions." 3 J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 703[03], at 703–16 (1982). This determination must be made on "a case-by-case basis and should focus on the reliability of the opinion and its foundation rather than merely on the fact that it was based, technically speaking, upon hearsay." *Soden*, 714 F.2d at 503 (citation omitted). Thus, the district court "may not abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility." *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y.1985), *aff'd*, 818 F.2d 187 (2d Cir.1987).

■ In this case, we believe the court abused its discretion in failing to address defendant's objection to Dr. Haugh's testimony based on topographical brain mapping. Rule 703 contemplates that the court will play some role in the assessment of expert testimony offered to a jury. While the trial process can leverage the probative value of this testimony, the process presupposes the court's guidance. Because the record does not sufficiently establish the trustworthiness of topographical brain mapping or its acceptance in the relevant scientific community, we VACATE the judgment and REMAND for a new trial.

did, but the court disagreed and the line of

questioning ceased.