UNITED STATES of America

v.

Craig E. WIGGINS, Defendant–Petitioner.

No. 97–CV–15.

United States District Court, N.D. New York.

July 15, 1997.

Craig E. Wiggins, Oakdale, LA, pro se.

Thomas J. Maroney, U.S. Atty., Binghamton, N.Y. (Thomas P. Walsh, Asst. U.S. Atty., of counsel), for U.S.

## MEMORANDUM DECISION, AND ORDER

McAVOY, Chief Judge.

Before the Court is petitioner Craig E. Wiggins' motion pursuant to 28 U.S.C. § 2255. Petitioner alleges: (1) ineffective assistance of counsel; (2) an unconstitutional conviction under *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); (3) government misconduct; and (4) that the Comprehensive Crime Control Act of 1984 is *per se* unconstitutional.

## I. BACKGROUND

On June 8, 1994, petitioner was convicted of interstate travel to commit a crime, carrying a firearm during and in relation to a crime of violence, and interstate transportation of an explosive, (Appendix to Brief of Defendant–Appellant at 1183), in violation of 18 U.S.C. §§ 1952, 924(c)(1), and 844(d). The convictions stemmed from the August 11, 1990, attempted bombing of a single-family residence in Deposit, New York occupied by Wiggins' sister-in-law and brother-in-law. On September 22, 1994, petitioner was sentenced to sixty months on Count One and sixty three months on Count Three, to be served concurrently. As to Count Two, petitioner was sentenced to sixty months, to be served consecutively to Count Three. (Appendix to Brief of Defendant–Appellant at 1184).

Petitioner appealed his conviction on the grounds that the Court erred in: (1) failing to dismiss the indictment on the ground of double jeopardy; (2) failing to dismiss on the grounds of pre-indictment and pre-arrest delay; (3) failing to dismiss the indictment on grounds of denial of a speedy trial; (4) precluding further cross-examination of witnesses Patti Charles and Richard Kadien; (5) refusing to admit the affidavit of an unavailable alibi witness; (6) admitting vital evidence without the prosecution establishing a proper chain of custody; (7) failing to dismiss as to Counts One and Two; (8) charging the jury; and (9) sentencing the defendant because of double counting, and not following the guideline procedure. By summary order filed July 11, 1995, the Unit-

ed States Court of Appeals for the Second Circuit affirmed petitioner's judgment of conviction. *See United States v. Wiggins,* 60 F.3d 811 (1995).

On January 3, 1997, petitioner filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner raises the following four arguments, none of which were raised on appeal: (1) ineffective assistance of counsel; (2) an unconstitutional conviction under *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); (3) government misconduct; and (4) that the Comprehensive Crime Control Act of 1984 is *per se* unconstitutional.

## II.  DISCUSSION

■ "Section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." *Barton v. United States,* 791 F.2d 265, 267 (2d Cir. 1986) (per curiam). Moreover, failure to raise a particular ground on direct appeal will bar consideration of that claim in a § 2255 motion unless the movant can show cause for failing to raise the issue, and prejudice resulting therefrom. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982).

### A.  Ineffective Assistance of Counsel

■ The Second Circuit formally adopted the cause and prejudice test in *Campino v. United States,* 968 F.2d 187, 189 (2d Cir. 1992), holding that "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." However, *Billy–Eko v. United States,* 8 F.3d 111 (2d Cir.1993) established for ineffective assistance claims an exception to the normal *Campino* rule that a failure to raise a claim on direct appeal amounts to a procedural default. *Douglas v. United States,* 13 F.3d 43, 47 (2d Cir.1993); *see also Riascos–Prado v. United States,* 66 F.3d 30 (2d Cir. 1995). In *Billy–Eko,* the Second Circuit held that defendants alleging ineffective assistance claims not brought on direct appeal would be permitted to raise those claims in a § 2255 motion when: (1) an accused is represented on appeal by the same attorney as at trial; or (2) the claim is not based solely on the record developed at trial. In the case at hand, because petitioner was represented by Michael A. Jacobs both at trial and on appeal, he satisfies the *Billy–Eko* test. Therefore, petitioner does not need to show cause and prejudice in order to bring an ineffective assistance of counsel claim.

In order to establish his ineffective assistance claim, petitioner must show: (1) that the attorney's representation was unreasonable under prevailing professional norms; and (2) that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the initial proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *see also United States v. Workman,* 110 F.3d 915 (2d Cir.1997). In applying this standard, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

The Court now turns to petitioner's claim of ineffective assistance, which is based upon counsel's alleged: (1) refusal to allow petitioner to testify at trial and indication he would withdraw as counsel if petitioner did testify; (2) failure to investigate and research the law in relation to the facts; (3) failure to move for dismissal of Counts One and Two; (4) failure to move for dismissal of the indictment because of bad faith on behalf of government officials in failing to preserve exculpatory evidence; (5) failure to retain an independent expert chemist to test the water solution used by the government's expert and to challenge the scientific reliability of the Greiss test; (6) failure to elicit favorable testimony during cross-examination; (7) failure to request a jury instruction on the trustworthiness of an alleged statement made by defendant; (8) failure to file a motion to arrest judgment pursuant to Fed.R.Crim. Proc. 34; (9) failure to raise, on direct appeal, the issue of insufficient evidence to support the conviction; (10) failure to raise, on direct appeal, the issue of violation of Fed.R.Evid. 615, the Rule of Sequestration of Witnesses/Single Agent; (11) counsel's cumu-

lative errors and omissions. The Court finds each of these claims to be without merit.

### (1) Refusal to allow testimony and indication of withdrawal

■ "A criminal defendant clearly cannot be compelled to remain silent by defense counsel." *United States v. Teague*, 953 F.2d at 1525 (11th Cir.1992); *see also Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (whether to testify not only an important tactical decision for a defendant, but also matter of constitutional right); *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) (criminal defendant is privileged to testify in his own defense or to refuse to do so). Petitioner primarily relies on two cases, *Nichols v. Butler*, 953 F.2d 1550 (11th Cir.1992) and *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3rd Cir.1977), which both held that a threat by an attorney to withdraw during a trial in order to coerce the defendant to relinquish his right to testify constitutes ineffective assistance of council. *Nichols*, 953 F.2d at 1553; *Wilcox*, 555 F.2d at 120.

■ In the case at bar petitioner provides no proof that his trial counsel either refused to allow petitioner to testify at trial or indicated that he would withdraw as counsel if petitioner did testify. The record does confirm that trial counsel recommended to petitioner that he should refrain from testifying. (Tr. at 1005). However, nowhere in the record is there evidence of trial counsel's refusal to allow petitioner to testify or threatening to withdraw. Petitioner relies on the following exchange:

> The Court: All right. Mr. Wiggins, what do you have to say about that?
>
> Mr. Jacobs: In regard to—part of the reason you've agreed with me you should not take the witness stand.
>
> The Defendant: It is my understanding that the Assistant United States Attorney threatened me with governmental obstruction and perjury, no matter what I said.

(Tr. at 1006). Petitioner points to Jacobs' statement, specifically "*part* of the reason you've agreed with me you should not take the stand," as proof that there were other reasons petitioner was not testifying. Petitioner claims that one of these other reasons was that trial counsel Jacobs was going to withdraw as counsel if petitioner did testify. However, "in a subsequent attack on the conviction the defendant must produce something more than a bare, unsubstantiated … self-serving allegation that his lawyer (in violation of professional standards) forbade him to take the stand." *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir.1991). Here, the only evidence that petitioner offers in support of his claim is his own statement that trial counsel forbade him from taking the stand. Because petitioner offers no other evidence, this claim must fail.

### (2) Failure to investigate and research the law

Petitioner's brief in support of his § 2255 motion alleges that he "specifically advised trial counsel … that there was no explosive in the pipe, that it contained potassium nitrate and charcoal. There was a missing third ingredient and there was never any danger to anybody." (Pet.Brief at 18). Petitioner's second claim is that trial counsel failed to investigate and research the law regarding the missing element (black powder). Had trial counsel researched the law, petitioner argues, he would have presented the fact that there was a missing element through the testimony of petitioner himself. Hence, such testimony would have supported the position that petitioner had nothing more than a dysfunctional pipe, as opposed to a destructive device.

Petitioner's claim is not supported by the actions of counsel at trial. Trial counsel cross-examined the government's expert witnesses at length as to the contents of the pipe:

**Rowland C. Pogue, Jr.:**

Q. Would you find sulphur in other compounds?

A. Yeah, You would find sulphur in other compounds.

Q. How many other compounds would you find sulphur in, hundreds?

A. Yeah, could be.

Q. Would you find sulphur in a different state in those hundreds of other compounds than you'd find it in black powder?

A. Black powder, it would be finely ground.

Q. But sulphur, isn't it a true statement, you're going to find sulphur in many compounds ... it could be found in its elemental state and it could be found in conjunction with other compounds, right?

A. Anything's possible, right. (Tr. at 183).

**Charles Midkiff:**

Q. Specifically, you found no particles of any particular explosive intact?

A. That's correct, intact. (Tr. at 337).

\*     \*     \*     \*     \*     \*

Q. How about with regard to whether or not there was already black powder contained on the pipe from some other source? Could you tell then specifically as to each piece of pipe which you tested, where the black powder came from?

A. No. (Tr. at 363).

**John C. Curry:**

Q. Well, to your knowledge, does black powder leave a residual smell after it burns of rotten eggs?

A. In some instances.

Q. And do you now recollect ever smelling anything along the lines of rotten eggs at the time you arrived back there to pick through the pieces?

A. I truly don't recall. (Tr. at 234).

\*     \*     \*     \*     \*     \*

Q. You do recall that you made a determination that the contents of the pipe were black powder because of this grayish smoke that went up in the air?

A. It was a whitish smoke, a large volume of it. I made a determination right there, yes.

Q. And if I told you that zinc burning gives off the same color smoke, would that impact your determination as to what you found that day?

A. I've never seen that smoke come off it.

Q. Do you know whether or not the burning of galvanized pipe gives off a sulphur residual?

A. I'm not aware of it.

Q. One way or the other?

A. I don't know. (Tr. at 234).

Counsel also presented his own experts to present the defense's theory as to the contents of the pipe:

**Peter Kranenberg:**

Q. Now, if that particular pipe were filled up with black powder and it were exploded, hypothetically, would it be logical that the threads would be bent inward at the top of the cap?

A. Absolutely not. (Tr. at 824).

\*     \*     \*     \*     \*     \*

Q. Hypothetically, could you give us your opinion as to whether or not you would end up with these kind of pieces and the other approximately ten pieces that existed in 1991 if you detonated this particular event with black powder alone?

A. Would you wind up with these products?

Q. Yes.

A. No, you wouldn't. (Tr. at 830).

▮ Petitioner's claim appears to confuse the distinction between trial counsel having knowledge of the applicable law and facts, and trial counsel being able to convince the jury that the facts supported a finding of not guilty. Petitioner's analysis, "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Based on the trial record, trial counsel did not fail to research and investigate the law in this regard. Finally, because "strategic decisions made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable," *Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987), this claim must fail.

### (3) Failure to move for dismissal of Counts One and Two

Petitioner's third claim is that trial counsel should have moved for a dismissal of Counts One and Two for failure to state a violation of the law, pursuant to Fed.R.Crim.Proc. 12(b)(2). Petitioner claims that this constitutes ineffective assistance of counsel.

■ Petitioner overlooks the fact that counsel moved to dismiss the indictment during the pre-trial motions. Counsel moved to dismiss on the basis that the evidence before the Grand Jury was not legally sufficient to establish the offenses charged and the indictment failed to state sufficient facts to constitute an offense against the United States, pursuant to the Fed.R.Crim.Proc. 12(b)(2). (Appendix to Brief of Defendant–Appellant at 44a). The fact that the Court denied counsel's motion (Appendix to Brief of Defendant–Appellant at 185a to 223a), is not a basis for a claim of ineffective assistance. Therefore, this claim must fail.

### (4) Failure to dismiss for "bad faith" actions of government

■ Petitioner's fourth claim is that trial counsel should have moved for dismissal of the indictment because of "bad faith" on behalf of the government. Petitioner bases his claim on the government's "failure to preserve exculpatory evidence consisting of pipe fragments and the water solution used by the government's chemist to conduct his experimental test to determine that black powder residue may have been attached to some of the pipe fragments" (Pet.Brief at 25–26).

The Supreme Court, in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), held that the government's failure to preserve material exculpatory evidence constituted a violation of the defendant's due process rights. *Id.* at 57–58, 109 S.Ct. at 337; *see also United States v. Cooper*, 983 F.2d 928 (9th Cir.1993). There is, however, no evidence that the government acted in "bad faith" in the present case. As petitioner himself notes, the government *lost* pieces of the pipe fragments. (Pet.Brief at 27). Without any further evidence, petitioner's claim that the unintended loss of evidence constitutes "bad faith" on the part of the government is unavailing.

Furthermore, there is no evidence of "bad faith" on the part of the government regarding the water solution used by Dr. Midkiff to conduct his test. Dr. Midkiff conducted his test, and petitioner's counsel took full advantage of his opportunity to question Dr. Midkiff's results in cross-examination. This in no way supports a finding of "bad faith" on the part of the government. Therefore, this claim must fail.

### (5) Failure to challenge the reliability of the Greiss test

■ Petitioner's fifth claim is that counsel failed to retain an independent chemist to challenge the scientific reliability of the Greiss Test and Modified Greiss Test, which petitioner alleges are "scientifically unreliable and have not been accepted within the scientific community as being reliable." (Pet.Brief at 30). Petitioner relies on *Head v. Lithonia Corp.*, 881 F.2d 941 (10th Cir. 1989) in support of this proposition. Petitioner further asserts that counsel should have had an independent chemist perform a mass spectrometer with a gas chromatogram analysis on the water solution. To support his claim, petitioner cites to *United States v. Distler*, 671 F.2d 954 (6th Cir.1981), which found such tests to be ninety-nine percent accurate. *Id.* at 962.

*Head* stood for the general proposition that scientific techniques employed by experts can be challenged at trial. *Head*, 881 F.2d at 944. The Tenth Circuit specifically held that "what is necessary is that the expert arrived at his … opinion by relying upon methods that other experts in his field would reasonably rely upon in forming their own, possibly different opinions." *Id.* at 943. Petitioner provides no support for his claim, nor is this court aware of any case that questions the Greiss Test as a method experts in the field would reasonably rely upon in forming their opinions. This position is supported by the testimony of Charles Midkiff during cross-examination regarding the Greiss Test: "Q. What are the drawbacks to the test? A. None that I'm aware of. Q.

Are there false positives in that test? A. Not that I've ever seen nor have ever seen reported." (Tr. at 345).

Further, though *Distler* did find the mass spectrometer and gas chromatograph tests to be ninety-nine percent accurate, this finding concerned oil spill identification of pollutants into the Ohio river. *Distler,* 671 F.2d at 962. The Court fails to see how *Distler* supports petitioner's assertion that "these specific tests ... would have shown the jury that there was not black powder in the pipe and that there was no destructive device." (Tr. at 33). Therefore, this claim must fail.

### (6) Failure to elicit favorable testimony

■ Petitioner's sixth claim is that trial counsel's failure to elicit favorable testimony during cross-examination constitutes ineffective assistance of council. (Pet.Brief at 33). In particular, petitioner claims that trial counsel should have forced the government's expert witnesses to admit that they did not have any personal or direct knowledge that black powder was ever in the pipe.

As established in the discussion of claim two, trial counsel directly attacked the government's expert witnesses on the black powder issue. Petitioner again confuses the distinction between trial counsel having knowledge of the applicable law and facts and trial counsel being able to present the law and facts in a light most favorable to the plaintiff. As stated previously, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Therefore, this claim must fail.

### (7) Failure to request a jury instruction on trustworthiness

Petitioner's seventh claim is that counsel's failure to request a jury instruction on the trustworthiness of alleged statements made by petitioner to Senior Investigator Kadien and Patti Charles [1] constitutes ineffective assistance of counsel. (Pet.Brief at 35). Petitioner relies on *Arrowood v. Clusen,* 732 F.2d 1364 (7th Cir.1984) as support for this proposition.

In *Arrowood,* the Court found that failure to request an instruction as to the trustworthiness of petitioner's pre-trial statements had a serious prejudicial effect on defendant's case. *Id.* at 1374. The statements at issue, however, were made *to the police while the petitioner was being detained.* As acknowledged by one of the questioning detectives in *Arrowood,* "the petitioner had not slept for at least twenty-four hours, the petitioner had been drinking the night before, and the petitioner said several times that he was tired." *Id.* at 1371. Defense counsel repeatedly raised the issue of the trustworthiness of petitioner's pre-trial statements during cross-examination, but failed to request a trustworthiness instruction during the jury charge. In the words of the court, "Instruction 180 was critical to the proper presentation of one of the defense theories ... and given the lack of tactical basis for the failure to request this instruction, we find that the failure constitutes error." *Arrowood,* 732 F.2d at 1372.

■ In the present case, however, a trustworthiness instruction was not critical to the proper presentation of any of the defense theories. Petitioner's statement was not made to the police. Though Patti Charles was cooperating with the police at the time, petitioner was unaware of such cooperation. Petitioner had no reason to suspect that his conversation with Patti Charles was anything out of the ordinary. Moreover, whereas the statements in *Arrowood* were made under duress, there is no evidence that Wiggins was under any such duress when he made

---

1. On the afternoon of September 7, 1990, Patti Charles, with Senior Investigator Richard Kadien present, placed a call from the Holiday Inn in Tulsa, Oklahoma, to petitioner, who was also in Tulsa. Because of problems with taping on a previous call, Richard Kadien had Patti Charles hold the phone out slightly so that both of them could hear what petitioner was saying. According to the testimony of Patti Charles, petitioner said "well, what I got on the plane I shouldn't have been able to get on the plane and the rest I got there." (Tr. at 400). According to the testimony of Richard Kadien, petitioner said "he got the part he shouldn't have been able to get on the plane and he got the rest out there, referring to New York." (Tr. at.570).

the statements at issue. Because a trustworthiness instruction was not critical to the proper presentation of one of the defense theories in the case at hand, this claim must fail.

### (8) Failure to file motion to arrest judgment

■ Petitioner's eighth claim is that trial counsel's failure to file a motion to arrest judgment pursuant to Fed.R.Crim.Proc. 34, constitutes ineffective assistance. Rule 34 states that "[t]he court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense." *Id.* at 121. As mentioned in the discussion of claim three, counsel moved to dismiss the indictment during the pre-trial stage on the basis that the indictment failed to state sufficient facts necessary to constitute an offense against the United States. (Appendix to Brief of Defendant–Appellant at 44a). Though a motion to arrest judgment under Rule 34 is made after the verdict has been handed down, and a motion to dismiss for failure to charge an offense under Rule 12(b)(2) is made at any time during the proceedings, they essentially ask the same question: to with, whether the indictment is sufficient in all respects. *See United States v. Zisblatt,* 172 F.2d 740 (2d Cir.1949) ("a motion in arrest of judgment will ... challenge the sufficiency of the indictment.").

■ Even if the failure to file a motion to arrest judgment could be considered an error on the part of counsel, this Court cannot say that but for the counsel's errors, the initial proceeding would have been different. In denying the counsel's 12(b) motion to dismiss, the trial court had already established its position that the indictment was sufficient in all respects. Because plaintiff fails to satisfy the second prong of ineffective counsel, this claim must fail.

### (9) Failure to claim insufficient evidence on direct appeal

■ Petitioner's ninth claim is that appellate counsel's failure to raise the issue of insufficient evidence to support the conviction on direct appeal constitutes ineffective assistance. (Pet.Brief at 37).

Petitioner does not point to case law which supports the proposition that counsel's failure to raise the issue of insufficient evidence on appeal constitutes per se ineffective assistance. Rather, he lays out the evidence that he alleges proves his innocence. This does nothing to support petitioner's claim. This Court is not willing to find that counsel's choice not to raise the issue of insufficient evidence on direct appeal constitutes unreasonable representation under prevailing norms. The nine issues that counsel did raise on appeal demonstrate that his representation was more than reasonable under prevailing norms. Because petitioner does not satisfy the first prong of ineffective assistance, this claim must fail.

### (10) Failure to raise issue of violation of Sequestration Rule

Petitioner's tenth claim is that failure to raise on direct appeal the issue of violation of Fed.R.Evid. 615, Rule of Sequestration of Witnesses/Single Agent, constitutes ineffective assistance of counsel. (Petitioner's Brief at 45). The issue of sequestration of the government's case agents was raised by petitioner's counsel prior to trial, when three agents were allowed to remain seated at the prosecution's table. (Tr. at 7). The court denied the motion, reasoning that "this is just an audibility hearing." (Tr. at 8).

■ Petitioner seems to confuse the purpose of Rule 615. As stated in the rule, witnesses are to be excluded "so they cannot hear the testimony of other witnesses." Fed.R.Evid. 615. During the period when the three agents were seated at the prosecution table, no testimony was heard. The court merely listened to various audio tapes to determine their audibility. Because no testimony was being given, Rule 615 did not apply. Therefore, counsel's failure to raise the issue on appeal did not constitute unreasonable representation under prevailing norms. Thus, this claim must fail.

### (11) Cumulative Errors

Petitioner's eleventh claim is that counsel's cumulative errors and omissions deprived petitioner of due process. Because this Court

can find no errors or omissions on the part of counsel in the previous ten claims, this claim must fail as well.

### B. Unconstitutional Conviction under *Bailey*

Petitioner claims that the conviction on Count Two of using and carrying a firearm is unconstitutional under *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and must be set aside. (Pet.Brief at 45). Though petitioner fails to show cause for not raising the issue on direct appeal, and prejudice resulting therefrom, considering the fact that *Bailey* was decided after the Second Circuit affirmed petitioner's judgement of conviction, this Court is willing to entertain petitioner's claim.

The focus of *Bailey* was the "use" prong of § 924(c)(1). In the opinion of the *Bailey* Court, the "language of § 924(c)(1), supported by its history and context, compels the conclusion that Congress intended use in the active sense of 'to avail oneself of.' To sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at ——, 116 S.Ct. at 509.

However, petitioner was not convicted under the "use" prong of § 924(c)(1). Rather, he was convicted under the "carry" prong: "carrying a firearm during and in relation to a crime of violence." (Appendix to brief of Defendant–Appellant at 1183). As § 924(c)(1) reads, a person may be prosecuted when he "uses or carries" a firearm. As noted in *Bailey,* "the 'carry' prong of § 924(c)(1), for example, brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.* at ——, 116 S.Ct. at 509. Hence, because *Bailey* does not apply to the case at hand, this claim must fail.

### C. Government Misconduct & Crime Control Act unconstitutional

With regard to petitioner's final two claims, that government misconduct occurred when A.U.S.A. Walsh deliberately sent threatening messages to petitioner's brother, and that the Comprehensive Crime Control Act is per se unconstitutional, petitioner fails to satisfy the cause and prejudice test for procedural default. Therefore, these claims must fail.

### III. CONCLUSION

After a review of the record as a whole, the court does not find sufficient evidence to support petitioner's claims of ineffective assistance of counsel or an unconstitutional conviction under *Bailey.* As to the remaining claims, petitioner has procedurally defaulted by failing to raise them on direct appeal. For the foregoing reasons, this petition under 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED.**