Stephen A. GOLDEN, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 2:97–CV–434–RL.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 20, 1999.

Stephen A. Golden, pro se.

Andrew B. Baker, Jr., U.S. Attorney's Office, Dyer, IN, for defendant.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Stephen Golden ("Golden") on December 23, 1997. For the reasons set forth below, the Court DENIES Golden's section 2255 motion. The Clerk is ORDERED to DISMISS this case with prejudice.

## *BACKGROUND*

The Seventh Circuit summarized the facts of this case in *United States v. Golden,* 102 F.3d 936, 939–40 (7th Cir.1996).

From approximately November 1993 until August 3, 1994, Golden was the head of an operation which distributed crack in Hammond, Indiana and Calumet City, Illinois. Initially, Golden himself distributed the crack from his apartment at 5495 Hyslop Street in Hammond, where he lived with his wife Seniqueca, in October and November 1993. He then employed other tenants, twenty-four-year-old Joseph Rodriguez ("Rodriguez") and Rodriguez's girlfriend, seventeen-year-old Reva Nieto ("Reva"), to assist in distribution at the Hyslop Street building. In November 1993, Golden and Seniqueca moved to a house at 6039 Jackson Street in Hammond. Some distribution occurred at the Jackson Street house, but it mainly continued at the Hyslop Street building. Golden expanded the business. Among his new employees were Reva's sixteen-year-old

brother, Walter Nieto ("Nieto"), sixteen-year-old Jimmy Flynn ("Flynn"), and fifteen-year-old Carlos Alfaro ("Alfaro").

Golden traveled to Chicago, Illinois, where he bought crack in golf-ball-sized chunks. He brought the chunks back to Hammond, broke them into small pieces approximately 0.1 grams or more each, and packaged the pieces in plastic bags where he or his workers sold for $10 apiece ("dime bags"). His workers received large packages containing many dime bags and, in return, delivered money to Golden either at the Hyslop Street building or at the Jackson Street house. Evidence adduced at trial showed that during its existence, the conspiracy distributed between ten and thirty grams of crack daily.

In December 1993, Rodriguez bought two Lorcin .380 semi-automatic pistols from East Chicago, Indiana for Golden. Rodriguez, Seniqueca, and Nieto picked up the guns while Golden waited in a second car. On January 20, 1994, an informant and an undercover Hammond police officer bought a total of three bags of crack from Flynn at the Hyslop Street building. In early February 1994, Golden moved the crack operation from the Hyslop Street building to the Jackson Street house, where police and agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") conducted surveillance. On February 1, 1994, Hammond police officers picked up the trash behind the Jackson Street house. The police found a record Seniqueca kept for Golden which tracked an average day's drug sales by the various workers. The record indicated who purchased drugs, how much they had paid, and the time of day of the purchases. The police also recovered an empty box for a Lorcin .380, an empty box for .380 ammunition, and two letters from Seniqueca to Golden which referred to the crack operation.

On February 5, 1994, Rodriguez gave the Hammond police a statement about Golden's crack business. The police subsequently obtained a warrant to search the Jackson Street house. Hammond police officers and ATF special agents executed the warrant on the evening of February 11, 1994. The officers arrested Alfaro, who was carrying two dime bags, $1,310, and a Lorcin .380 (with serial numbers matching the box found in the trash on February 1). In the house, the officers found boxes of .380 ammunition, a box for a Lorcin .380 (with different serial numbers than the gun Alfaro was carrying), a package with thirty-one dime bags containing 4.32 grams of crack, pagers, and plastic baggies.

Following the February 11 raid, Golden moved the operation to Calumet City, Illinois, for several weeks, but eventually moved it back to the Jackson Street house in March or April of 1994. On July 29, 1994, one of Golden's regular customers, Debra Darge, was arrested after buying crack at the Jackson Street house. Darge agreed to cooperate with the police. On August 1, 1994, Darge made a controlled purchase of four dime bags from Golden. After that purchase and after further surveillance of the Jackson Street house, a second search warrant was executed on August 3, 1994. The police recovered $900 and one dime bag, and Golden and Seniqueca were both arrested.

Robert Lewis was appointed to represent Golden. On August 18, 1994, a federal grand jury returned a twelve-count indictment against Golden and Seniqueca charging them with participating in a conspiracy to distribute cocaine base and with committing various other drug-related offenses.[1] On September 14, 1994, Lewis was allowed to withdraw because he represented a potential government witness. R. Cordell Funk was appointed to replace Lewis. Golden's trial began on December 5, 1994. On the second day of trial, Golden complained to the district court about Funk and requested new counsel or, alternatively, asked for a thirty-day continuance in order to obtain new or "better" counsel. The district court denied this motion. On December 8, 1994, Golden was found guilty of Counts 1 and 4–11 in sepa-

---

1. Seniqueca pleaded guilty to one count of traveling in interstate commerce in aid of racketeering and was sentenced to probation. She testified against Golden at his trial.

rate verdicts.[2] Twenty days after Golden was found guilty, he filed a pro se motion for new trial, alleging ineffective assistance of counsel by Funk. Funk filed a motion to withdraw on January 6, 1995, and the court granted the motion on January 31, 1995. For the third time, the district court appointed new counsel, Jerry L. Peteet. On April 19, 1995, Peteet filed a second motion for a new trial on Golden's behalf, reiterating Golden's claims of ineffective assistance by Funk and alleging unspecified newly-discovered evidence. On May 1, 1995, the district court denied the motion. On February 1996, Golden, represented by Peteet, was sentenced to life imprisonment and a ten-year term of supervised release. The court also imposed a sixty-month consecutive term on the firearm charge.

*Id.* at 939–40. Soon after, Golden filed his appeal. The Seventh Circuit affirmed the judgment of conviction on Counts 1, 4, 5, and 7–11. *Id.* at 948. The Seventh Circuit reversed the judgment of conviction on Count 6, using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. section 924(c). *Id.* Almost one year later, Golden filed the instant section 2255 motion, claiming ineffective assistance of counsel.

*DISCUSSION*

Golden presents four ineffective assistance of counsel claims in his section 2255 motion. First, he asserts that his trial counsel, Funk, failed to properly advise him of the plea agreement terms offered by the Government. Second, Golden maintains that sentencing and appellate counsel, Peteet, failed to object to an upward adjustment for his role in the offenses charged. Third, he insists that Peteet failed to argue the Government's failure to meet its burden of proof regarding his involvement with narcotics. Finally, Golden claims that he was deprived of a reasonable opportunity to perfect and submit an effective appellate brief.

Claims of ineffective assistance of counsel are governed by the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance fell well below the standard of the Sixth Amendment. *Id.* at 687, 104 S.Ct. 2052. Specifically, the defendant must show that counsel's performance " 'fell below the objective standard of reasonableness' and 'outside the wide range of professionally competent assistance.' " *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 668, 690, 104 S.Ct. 2052). When considering the performance prong, a court's "scrutiny of counsel's performance must be highly deferential," and the court "must indulge a strong presumption that counsel's conduct" was constitutionally adequate. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Under the second prong, prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. A court can resolve an ineffective assistance claim by deciding either *Strickland* prong against the defendant, and the court need not consider performance before considering prejudice.

*Issue One*

■ Golden argues that but for the ineffective assistance of his counsel, he would have accepted the plea agreement offered by the Government. Though the Seventh Circuit generally addressed trial counsel's assistance on appeal, *Golden,* 102 F.3d at 943 ("Funk's pretrial performance regarding the plea agreement was within the range of competence we demand from criminal attorneys"), Golden raises specific errors in a

---

**2.** Golden was found guilty of the following counts: Count 1, conspiring to possess with intent to distribute cocaine base in violation of § 21 U.S.C. 846; Counts 4, 5, 7, and 8, distributing crack in violation of 21 U.S.C. § 841(a)(1); Count 6, using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and Counts 9, 10, and 11, employing juveniles for drug distribution in violation of 21 U.S.C. § 861(a)(1).

Prior to trial, the Government dismissed Counts 2 and 3, maintaining crack houses in violation of 21 U.S.C. § 856(a)(1), and Count 12, traveling in interstate commerce in aid of racketeering in violation of 18 U.S.C. § 1952.

letter by trial counsel that were not raised on appeal. As the Court considers Golden's argument, it should consider whether Golden establishes "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir.1998) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991)); *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.1986)(doubting defendant's ability to establish prejudice because he "does not argue or allege . . . that there is a reasonable probability that, but for counsel's errors, he would have accepted the plea agreement").

Golden's objective evidence comes in the form of a letter from counsel to Golden. Golden claims that his attorney misinformed him of the terms of his plea agreement in a letter dated October 5, 1994, and that had he known the true terms of the plea agreement, he would have pled guilty in accordance with the plea agreement. The letter states that if Golden pled guilty to one of the narcotics distribution counts (Count 5), the Court "would be limited to the maximum sentence for violation of Title 21 U.S.C. section 856. Therefore, you would receive a 20-year sentence." (Def.'s Ex. 2) Golden found the letter ambiguous and incorrect in several respects.

First, Golden claims that counsel miscalculated his sentence range as required under Title 21 United States Code section 841(a)(1). He insists that the narcotics involved in Count 5 included 33 dime bags, each containing one gram of cocaine base. Because Count 5 allegedly involved more than five grams of cocaine base, his sentence would have been between 5 years and 40 years, rather than limited to 20 years. The Government responds that Golden has miscalculated, maintaining that the dime bags involved in Count 5 each contained .1 gram of cocaine base, for a total of 3.3 grams of cocaine base. Because the amount is less than 5 grams of cocaine base, his sentence under the plea agreement would have been capped at 20 years. Thus, according to the Government, Golden's counsel was not mistaken.

Count Five charged Golden with possession with the intent to distribute cocaine base on February 11, 1994. At trial, Sergeant Michael Bales testified that on February 11, 1994, he and his team executed a search warrant of 6039 Jackson, Hammond, Indiana and recovered two small bags from a boy containing a rock-like substance (Ex. 2A), and from the back of the stove, a large bag containing 31 individual baggies with a rock-like substance in each of them (Ex. 2). According to the expert testimony of a forensic drug analyst, Exhibit 2 weighed 4.32 grams net, and Exhibit 2A contained .23 grams net. She further testified that both exhibits contained cocaine base. The total weight of the 33 baggies was 4.55 grams net, less than 5 grams of cocaine base. Consequently, Golden's trial counsel was correct; if Golden had pled guilty, the longest sentence he could have received was 20 years.

Second, Golden maintains that the letter incorrectly discusses his pleading guilty to a violation of Title 21 United States Court section 856, the establishment of manufacturing operations. The proposed plea agreement was based on Count 5, a violation of Title 21 United States Code section 841(a)(1), possession with the intent to distribute cocaine base. The Government responds that counsel's mention of 21 U.S.C. section 856 was merely a typographical error that could have been remedied by Golden asking his attorney to clarify. Further, Golden argues that counsel failed to present him with a copy of the proposed plea agreement, and as a result refused to withdraw his not-guilty plea. The Government notes that Golden's formal plea of not-guilty could not be withdrawn until he reviewed and signed his plea agreement, and the Court had accepted it. *See* Fed.R.Crim.P. 11. The Government insists that this misunderstanding could have been clarified had Golden asked his attorney.

Golden blames his confusion about the typographical error and the alleged failure to review the plea agreement on trial counsel. While the typographical error is unfortunate, it does not rise to the level of ineffective assistance of counsel. Apart from the typographical error, trial counsel communicated the terms of the proposed plea agreement

and Golden's likely prison time via this letter. *See Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir.1986). Both misunderstandings could have been remedied if Golden had brought them to counsel's attention, and counsel had explained them to Golden. The Court would be faced with a more difficult decision had trial counsel refused to clarify Golden's misconceptions. However, Golden offers no evidence that he contacted trial counsel about his confusion.

Moreover, it is not reasonably probable that Golden would have accepted the proposed plea agreement absent trial counsel's advice. *See Paters,* 159 F.3d at 1046. In his brief, Golden claims that he would have pled guilty because "it was apparent that the prospects of his success at trial were very thin." The Government presents a letter dated November 25, 1994, from Golden to the Court which states that Golden "could not take a plea for 20 years, because [he is] not guilty of the charges." The Government argues that this letter demonstrates Golden's unwillingness to accept the plea agreement, regardless of any ambiguity in counsel's letter.

Because there is no evidence in the record of any such letter being received by the Court, the Court hesitates to rely on it. However, Golden's testimony at a hearing during the second day of trial reveals his state of mind at that time. At the hearing on his request for a new attorney, Golden made the following statements: "I don't feel as though I'm guilty." (Trial trans. Vol 2, p. 277), and "I don't want to give my life to something that I didn't commit." (Trial trans. Vol 2, p. 281). Regarding his trial counsel, Golden commented, "I feel as though he [sic] just ineffective on the strength that he [sic] pushing me to sign this plea." (Trial trans. Vol. 2, p. 281). Golden also mentioned that he felt that his attorney was pressuring him to accept the plea agreement, and that trial counsel said he'd get either twenty years or life in prison. (Trial Tr. Vol. 2, pp. 281, 172). Thus, contrary to Golden's section 2255 brief, Golden was unwilling to plead guilty at the time of trial despite counsel's advice to do so.

## Issue Two

Golden maintains that counsel at sentencing should have objected to the four-level upward adjustment for his role as organizer and leader of a criminal conspiracy involving five or more participants. *See* U.S.S.G. § 3B1.1(a). Golden claims that the record does not reasonably support the upward adjustment. While Golden admits that he was involved with Rodriguez and Seniqueca, he claims that he had no authoritative role in their exploits. Among other things, Rodriguez testified at trial that a physical altercation between Golden and himself related to their drug business. Rodriguez's girlfriend, Reva, testified that the fight related to her affair with Golden. Golden claims that Rodriguez testified in an effort to harm Golden, and therefore his testimony should be regarded as incredible. Moreover, according to Golden, the testimony of the juveniles is discredited because they do not conclusively show that Golden was supervising their activities or had knowledge of Rodriguez's recruitment of them.

The Government claims that even if the physical altercation between Golden and Rodriguez was based on Golden's affair with Reva, several other witnesses testified to Golden's control of the drug trafficking organization. Among those witnesses were the three juveniles, Seniqueca, and Reva. The Government highlights the testimony of these witnesses to prove its point.

There is ample evidence in the record to support that Golden's criminal activity was extensive. *See* U.S.S.G. § 3B1.1(a). Along with Golden, the record supports that Seniqueca, Rodriguez, Reva, Nieto, Flynn, and Alfaro were participants in the drug trafficking scheme. Testimony and other evidence at trial showed Golden's activities in organizing and conducting the illegal business. For example, several witnesses testified that Golden supplied the crack for their operations in Hammond and Calumet City. Seniqueca, Rodriguez, Reva, and Nieto testified that they traveled with him to Chicago on different occasions to pick up the drugs, and that they did not know Golden's drug contact in Chicago. Seniqueca testified that she and Golden would package the crack in dime

bags, and then gave the baggies to the other conspiracy members for distribution. Rodriguez, Neito, and Flynn testified that Golden paid them $200 plus commission, $300, and $150 per week, respectively, to sell drugs. Neito and Flynn also testified that when they ran out of drugs to sell, they called Golden, and he would refresh their supply. Thus, there was sufficient evidence supporting the section 3B1.1(a) upward adjustment.

*Issue Three*

 Golden insists that counsel failed to challenge the Government's failure to meet its burden of proof with respect to his involvement with crack cocaine. First, he claims that the presentence investigation report, which held him accountable for 2.5 kilograms of cocaine base, was clearly erroneous because the Government did not prove that his involvement with crack cocaine trafficking. Second, Golden contends that his due process right at sentencing was violated because the Government did not present evidence that the cocaine base involved in the case was manufactured with sodium bicarbonate.

As to Golden's first contention, he claims that the record does not reflect that the Government proved his involvement with the distribution of 2.5 kilograms of cocaine base. The Seventh Circuit specifically addressed this issue on direct appeal, finding this Court's estimate of 2.5 kilograms to be conservative based on trial testimony. *Golden,* 102 F.3d at 944–45. An argument raised and resolved on appeal cannot be entertained under section 2255 unless intervening legal developments call the decision into question. *Alexander v. United States,* 121 F.3d 312, 313 (7th Cir.1997) ("A petition under § 2255 is not an appropriate way to add a new wrinkle to a theme advanced, and resolved, on direct appeal."); *United States v. Taglia,* 922 F.2d 413 (7th Cir.1991). Golden does not identify any intervening legal developments, and the Court is not aware of any, so this argument is foreclosed.

 Regarding Golden's second argument, Golden admits that the Government presented evidence indicating that the substance was cocaine base, but maintains that his attorney should have challenged the Court's decision to enhance his sentence based on the involvement of "crack" cocaine. His only contention regarding the substance is that the Government failed to prove it was manufactured using sodium bicarbonate. The Government has no duty to prove that the substance was processed with sodium bicarbonate in order for it to qualify as "crack" under United States Sentencing Guidelines. *See United States v. Abdul,* 122 F.3d 477, 479 (7th Cir.)("requiring proof that the cocaine has been processed with sodium bicarbonate would impose too rigid a standard to comport with congressional intent"), *cert. denied,* —— U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). Rather, to invoke the sentence enhancement, the Government must prove by a preponderance of the evidence that the cocaine base was " 'crack' as the term is generally understood." *Id.* at 479; *United States v. Valenzuela,* 150 F.3d 664, 667 (7th Cir. 1998); *United States v. Earnest,* 129 F.3d 906, 915 (7th Cir.1997).

 In this case, several witnesses referred to the substance as "crack" cocaine during the trial, including Seniqueca, Rodriguez, Flynn, Special Agent Peter Pappas, Officer Michael Bales, and confidential informant, Debbie Darge. The attorneys referred to the substance as "crack" cocaine throughout the trial, specifically, when examining and/or cross examining Seniqueca, Rodriguez, Neito, Reva, and Carrie Kaiser. A veteran narcotics agent described the substance he purchased from the conspiracy while undercover as "crack" cocaine. (Tr. Tr. Vol.3, pp. 615–17) Golden presents no evidence to the contrary. *Cf. Abdul,* 122 F.3d at 479–80 (determining that the testimony of a veteran narcotics agent and a forensic chemist was sufficient to find a substance to be crack cocaine where the defendant presents no evidence to the contrary); *United States v. Hall,* 109 F.3d 1227, 1236 (7th Cir.1997)(holding that enhanced penalties based on distribution of crack cocaine were supported by the evidence when "[w]itness after witness testified that the substance defendants distributed was 'crack' "); *Valenzuela,* 150 F.3d at 668 (finding evidence of defendant's admissions coupled with police officers' observations of the drugs purchased

and laboratory results were "more than enough for a district court to decide by a preponderance of the evidence that [defendant] dealt crack cocaine."). Consequently, the Court is unpersuaded by Golden's argument. The Government offered sufficient evidence to show that the narcotics at issue were "crack" cocaine.

*Issue Four*

Finally, Golden claims that he was deprived a reasonable opportunity to perfect and submit an appeal brief because appeal counsel failed to clarify that Golden had filed his motion to remove trial counsel before his trial began. The Seventh Circuit found that Golden did not request new counsel until the second day of trial, and as such was "untimely and merely a tactic to manipulate or delay the trial." *Golden,* 102 F.3d at 941 (citation omitted).

Golden presents a letter to the Court dated November 25, 1994, as evidence of the timing of his request for new counsel. This letter is not file-stamped by the clerk's office.[3] In response, the Government quotes defense appellate counsel's brief, which allegedly states that Golden notified the Court of his desire for new counsel "prior to trial." While Golden's appellate brief was not attached to the Government's brief in this case, the appellate order indicates that the Seventh Circuit was aware of Golden's contention.

In the appellate order, the court mentions that "Golden argues that he informed the court *before trial,* during trial, and *during the plea negotiations* that he had a conflict with Funk." *Golden,* 102 F.3d at 941 (emphasis added). The court specifically addresses Golden's letter in a footnote:

> At the hearing, Golden told the district court that he had sent a letter to the court complaining about Funk before the trial. The district court was unable to locate this letter, but offered to allow Golden to retrieve it from the Correctional Center or

submit a receipt for such a letter. Golden did not do so, and this letter is not a part of the record on appeal. We therefore do not consider it in determining whether Golden's motion was timely.

*Id.* at 941 n. 3. Thus, appellate counsel did argue that Golden had notified this Court of his displeasure with trial counsel before trial. The Seventh Circuit was aware of the alleged existence of Golden's letter requesting new counsel, but found no evidence of it in the record. Appellate counsel could not be expected to make a serious appellate argument based on a document that was not in the trial record. Therefore, the Court finds Golden's fourth contention to be without merit.

*Additional Issues Raised in Golden's Reply Brief*

■ Golden filed a reply brief on December 29, 1998, in which he raises new issues. "[A]n argument that was not made in the defendant's initial brief should be considered waived even though the defendant is pro se." *Wright v. United States,* 139 F.3d 551, 553 (7th Cir.1998); *United States v. Bernal,* No. 97C2922, 1998 WL 325222, *8 (N.D.Ill. June 10, 1998); *see also United States v. Feinberg,* 89 F.3d 333, 340–41 (7th Cir.1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."), *cert. denied,* 519 U.S. 1133, 117 S.Ct. 997, 136 L.Ed.2d 876 (1997); *Wilson v. Giesen,* 956 F.2d 738, 741 (7th Cir. 1992) (finding that an argument was waived because "plaintiff failed to raise it until his reply brief, leaving the defendants no chance to respond"). Golden did not address these issues in his section 2255 motion. Because the Government would not have an opportunity to respond to these issues, the Court will not consider them. *See United States v. Alvarez,* 137 F.3d 1249, 1251 (10th Cir.1998) (refusing to consider additional claims raised in a section 2255 reply brief).

---

**3.** A letter was discussed briefly on the second day of trial during the hearing on Golden's request for new counsel. At the hearing, Golden claimed that he sent a letter to the Court via certified mail, and that the green receipt was in his locker at the Metropolitan Correctional Center in Chicago, Illinois. At that time, the Court stated that there was no record of any such letter. Since then, Golden has not presented a copy of the certified mail receipt. The Court has reviewed the criminal record, and cannot find any such letter.

*CONCLUSION*

For the reasons expressed above, the Court DENIES Golden's section 2255 motion. The clerk is ORDERED to DISMISS this case with prejudice.