**UNITED STATES of America,**

**v.**

**David YARMOLUK, Defendant/Petitioner.**

**No. 96 Cr. 863 (JSR).**

United States District Court,
S.D. New York.

Feb. 5, 1998.

Gerald A. Vergilis, Vergilis, Stenger, Roberts & Pergament, Wappingers Falls, NY, Jared J. Scharf, White Plains, NY, for Defendant.

Michael L. Tabak, Asst. U.S. Atty., U.S. Atty's Office, White Plains, NY, for U.S.

### MEMORANDUM ORDER

RAKOFF, District Judge.

■ After pleading guilty to bank fraud, defendant Yarmoluk successfully persuaded this Court to adjust his sentence downward on the ground that he fully accepted responsibility for his criminal activity. Now, without the slightest suggestion of shame, he seeks to vacate his conviction on the claim that he never really intended to defraud any-

one. A guilty plea, however, is a "grave and solemn act," not to be entered into—or withdrawn—lightly. *United States v. Hyde*, —— U.S. ——, ——, 117 S.Ct. 1630, 1634, 137 L.Ed.2d 935 (1997). For the reasons stated below, petitioner's application to vacate his sentence and withdraw his guilty plea pursuant to 28 U.S.C. § 2255 is denied.

Petitioner, an automobile retailer, pleaded guilty on February 11, 1997 to defrauding The Bank of New York of approximately $1.2 million through a "check-kiting" scheme that allowed him to draw on a series of worthless checks. Without any downward adjustments or departures, petitioner would have been facing a sentence of approximately two-and-a-half years. At petitioner's behest, the date of sentence, originally set for May 20, 1997, was adjourned to September 5, 1997 to enable petitioner, who was already seeking a downward adjustment for acceptance of responsibility, to also present materials warranting a downward departure on grounds of extraordinary health problems. Thereafter, in connection with the downward adjustment, petitioner testified at the sentence hearing as follows:

> THE COURT: Let me see if I can spell it out. You say in your letter and your counsel has reaffirmed that you knew that what you were doing here was wrong, is that correct?
>
> THE DEFENDANT: Right, writing the checks, signing the checks.
>
> THE COURT: And basically you knew that these were worthless checks that were made to appear momentarily as not worthless checks because of the way the accounts were being moved around, correct?
>
> THE DEFENDANT: Right, uncollectable.
>
> THE COURT: And you knew when you were doing that, that was an unlawful, misleading thing to do, yes?
>
> THE DEFENDANT: I assumed it was illegal.

*United States v. Yarmoluk*, 1997 WL 642564, at *10 (S.D.N.Y.1997) (September 4, 1997 Transcript at 20–21).

Crediting these responses, as well as defendant's representations concerning his difficult

health situation, the Court both adjusted and departed downward, sentencing defendant to a prison term of a year and a day.

Dissatisfied even with this result, petitioner thereupon retained new counsel and brought the instant motion seeking to withdraw his guilty plea pursuant to 28 U.S.C. § 2255.

■ Under § 2255, petitioner may be permitted to withdraw his guilty plea only if the plea was based on "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Wong v. United States*, 1997 WL 362154, at *4 (S.D.N.Y.1997) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)) (internal quotation marks omitted); *see also United States v. Bell*, 1985 WL 26 (S.D.N.Y.1985).[1] Petitioner advances three arguments in support of his § 2255 motion: that the Court failed to adduce a factual basis for the "intent" element of the offense; that petitioner was not aware when he entered his guilty plea that evidence existed that the bank was aware of and condoned the check kiting scheme; and that the Government's theory of check kiting is novel and might not be sustained by a court.

■ As to the first point, while the Court's inquiry at the time of defendant's original allocution of guilt on February 11, 1997 may not have been as explicit on the issue of intent as might ideally be desired, any conceivable defect in this regard was more than cured by the above-quoted admissions made by the defendant at the time of his sentence, not to mention his similar admissions in his pre-sentence submissions to the Probation Office. Moreover, "the court is not required to rely solely on defendant's own admissions," but rather may "rely on any facts at its disposal." *United States v. Maher*, 108

F.3d 1513, 1524–25 (2d Cir.1997) (citation and internal quotation marks omitted). Even at the time of the original allocution, given that the defendant had admitted in detail the conduct constituting the offense, that the Government had represented that it could prove each element of the offense beyond a reasonable doubt, and that petitioner's own counsel had represented that he did know of any valid defense to the charge or any reason why his client should not plead guilty, *see* February 11, 1997 Transcript at 10, the Court was more than justified in concluding that the plea was supported by "an independent basis in fact concerning each of the essential elements of the offense," *id.* at 14; *see also* Fed.R.Crim.Pro. 11(f). When to this is added the subsequent statements in the Presentence Report (to which defendant expressly raised no objection), petitioner's assertion of his acceptance of responsibility in his personal letter to the Court, and petitioner's above-quoted admissions at time of sentence, petitioner has not remotely shown "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Wong*, 1997 WL 362154, at *4.

■ The purported basis for petitioner's second argument—that there is "new" evidence that the bank was aware of petitioner's check-kiting and was therefore not defrauded—takes the form, not of admissions from the bank, but of affidavits of others involved in petitioner's scheme. To begin with, this is not new evidence in terms of § 2255. *See generally United States v. Johnpoll*, 748 F.Supp. 86, 91 n. 3 (S.D.N.Y.1990) ("For purposes of § 2255 motions, 'new evidence' is 'evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner.'" (quoting *Giacalone v. United States*,

---

1. Petitioner also contends that his motion should be considered under the more liberal standard permitted by Fed.R.Crim.Pro. 32(e), because, shortly prior to sentencing, his now-counsel wrote to the Court indicating that he might be retained to represent the defendant for purposes of seeking to vacate the guilty plea (on one of the three grounds now alleged) and requesting a still-further adjournment of defendant's much-

delayed sentence. After the Court denied that adjournment, for reasons fully stated on the record, *see United States v. Yarmoluk*, 1997 WL 642564, at *5–8 (S.D.N.Y.1997) (September 4, 1997 Transcript at 1–15), defendant appealed, but then withdrew his appeal in favor of the instant § 2255 motion. Accordingly, it is clear that the motion must be assessed under the standards of § 2255.

739 F.2d 40, 43 (2d Cir.1984))), *aff'd*, 932 F.2d 956 (2d Cir.1991), *cert. denied*, 502 U.S. 881, 112 S.Ct. 229, 116 L.Ed.2d 185 (1991).

■ Second, the only admissible evidence set forth in the affidavits[2] is to the effect that the bank had in place certain policies and practices to help it try to monitor its bank accounts. "[A] check kiter does not necessarily achieve the illegal end by violating bank policy or practice; a check kiter may also take note of the limitations to ... [a] bank's indulgence and then stay within those limits, as a way to keep the scheme in play long enough to build up undetected credit." *United States v. Matt*, 116 F.3d 971, 974 (2d Cir.1997). As petitioner himself admitted in his pre-sentence letter to the Court, "I started using the Bank of New York accounts to create a credit line for the business. Although the Bank was *not* aware of this, I never imagined that I would get as far behind as I did." Petitioner's July 29, 1997 Letter (emphasis supplied). Moreover, the Government, in its response to this motion, has supplied the sworn grand jury testimony of petitioner's former employee, Judy Smith, that she was instructed by petitioner to lie to the bank when it inquired about the reason for the large number of transfers between the business's linked accounts.

■ Finally, an institution may be defrauded even if its employees allow or participate in the fraudulent practices. *See United States v. Rackley*, 986 F.2d 1357, 1361 (10th Cir.1993) ("Defendant confuses the notion of defrauding a federally insured bank with the idea of defrauding its owner or directors.... Thus, even if [a bank officer] knew the true nature of the loan transactions, the institutions could nevertheless be defrauded."), *cert. denied*, 510 U.S. 860, 114 S.Ct. 173, 126 L.Ed.2d 132 (1993); *United States v. Ripinsky*, 109 F.3d 1436, 1440–41 (9th Cir.1997). As in *United States v. Chandler*, 98 F.3d 711 (2d Cir.1996), petitioner's conduct and the scheme he put in place are "inexplicable other than as a means of intentionally exposing [the bank] to an unwanted risk." *Id.* at 716.

■ As to petitioner's third argument— that the check-kiting scheme to which he pled guilty does not make out an offense under 18 U.S.C. § 1344(1) because, he claims, "check-kiting" must necessarily involve more than one bank—this argument was previously considered, and rejected, by the Court at the time of sentencing, *see* September 4, 1997 Transcript at 10–11, and has not improved with age. As the Court noted then, the "check kiting" referred to in Count 2 of the Indictment (to which defendant pled guilty) is specifically defined in Count 1 of the Indictment and in the plea agreement, both of which petitioner swore he had read and understood, as a scheme "in which a series of worthless checks were drawn on and deposited to various accounts of Tara Motors Ltd. and related entities, making it appear as if those accounts were solvent, when in truth and in fact, as petitioner ... then and there well knew, those accounts had insufficient funds to cover the transactions." Indictment 96 Cr. 863 Count 1. This is exactly the fraud petitioner admitted to.

Moreover, as the Seventh Circuit recently explained in *United States v. Norton*, 108 F.3d 133 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 66, 139 L.Ed.2d 28 (1997), "[w]hile a 'traditional' check kiting scheme may involve multiple banks, ... § 1344(1) does not simply ban check kiting. Instead, the statute prohibits any recognizable scheme formed with the intent to defraud. The broad range of schemes covered by the statute is limited only by a criminal's creativity." *Id.* at 135 (citation and internal quotation marks omitted). Whereas in *Norton* the defendant designed "a version of check kiting where an ATM fills the shoes of a second bank," *id.*, petitioner here devised a version of check kiting in which his use of his linked accounts tricked the Bank of New York into inflating his balances and honoring checks drawn against insufficient funds. This more than satisfies the requirement of "a scheme or artifice ... to defraud a financial institution." 18 U.S.C. § 1344(1).

---

**2.** Self-serving speculations, hearsay, and other inadmissible evidence in the affidavits must be disregarded. In addition, the affidavits should be construed, if anything, favorably to the Government. *See Maher*, 108 F.3d at 1530 ("[T]he court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant").

**210**

Accordingly, since "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255, the Court hereby denies the petition, on the papers, in its entirety. Further, since petitioner "has not made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

SO ORDERED.