**Frank SLEVIN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 98 CIV. 0904(PKL).**

United States District Court, S.D. New York.

Nov. 3, 1999.

Baumeister & Samuels, P.C., New York City, Robert S. Franklin, of counsel, for Petitioner.

Mary Jo White, United States Attorney, Southern District of New York, New York City, Marc A. Weinstein, of counsel, for Respondent.

## *OPINION AND ORDER*

LEISURE, District Judge.

Petitioner *pro se* Frank Slevin is a federal prisoner challenging his conviction and sentence pursuant to 28 U.S.C. § 2255. On September 13, 1999, this Court held an evidentiary hearing to determine whether petitioner received ineffective assistance of counsel during pretrial plea negotiations. For the following reasons, petitioner's § 2255 motion is denied.

## BACKGROUND

The substantive facts and procedural history of this § 2255 petition have been set forth in detail in *Slevin v. United States*, No. 98 Civ. 0904, 1999 WL 549010, at *1–*2 (S.D.N.Y. July 28, 1999). Hence,

only those facts necessary for determination of the instant motion are stated here.

On August 16, 1994, petitioner was indicted on ten counts of mail and wire fraud, conspiracy to commit mail and wire fraud, and various other offenses relating to the tendering of surety bonds to private construction contractors. Nine days later, petitioner, represented by Harry R. Pollak, Esq. ("Pollak"), tendered a plea of not guilty. The original indictment was then superseded and redacted, and petitioner was tried on an indictment charging five counts of mail fraud in violation of 18 U.S.C. § 1341, one count of wire fraud in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. Following a seven-day jury trial before the late Hon. Dominick L. DiCarlo, Senior Judge of the United States Court of International Trade, sitting in this Court by designation, on June 13, 1995, petitioner was convicted on all counts. On December 13, 1995, petitioner was sentenced by this Court to 78 months' imprisonment, followed by three years' supervised release, and a mandatory $350 special assessment.

On December 26, 1995, petitioner filed a notice of appeal. Despite efforts by petitioner to replace Pollak as his appellate counsel, Pollak again represented petitioner in those proceedings. The Second Circuit ultimately affirmed petitioner's conviction and sentence on December 18, 1996. *See United States v. Slevin,* 106 F.3d 1086 (2d Cir.1996).

Petitioner now seeks § 2255 relief based on allegations that he received ineffective assistance of counsel both during and after his trial and during plea pretrial negotiations. On July 28, 1999, this Court denied petitioner relief on various claims of ineffective assistance. *See Slevin,* 1999 WL 549010, at *3–*9. However, this Court granted petitioner's request for an evidentiary hearing to explore two issues: "(1) whether petitioner's trial counsel provided ineffective assistance in advising petitioner with respect to the Government's plea of-

fer; and (2) whether there is a reasonable probability that, but for counsel's allegedly erroneous advice, petitioner would have accepted the Government's plea offer rather than proceeding to trial." *Id.* at *13. After petitioner received the Court's July 28, 1999 Order, but prior to the evidentiary hearing, it was learned that Pollak was recently deceased. *See* Pet. Mem. at 2.

At the hearing, petitioner called two witnesses: himself and his wife, Margaret Slevin ("Mrs.Slevin"). The Government produced a single witness, Susan Brune ("Brune"), the former Assistant United States Attorney who had prosecuted petitioner and who had allegedly made the plea offer at issue. For the most part, petitioner reiterated the allegations he set forth in his affidavit. *See* September 13, 1999 Hearing Transcript ("Hearing Tr.") at 15–21. Mrs. Slevin testified that her husband had informed her that he had received a two-year plea offer from Brune, but that Pollak counseled petitioner to reject it because, according to Pollak, petitioner was only facing "two to three years" in prison. *See id.* at 11–12. Brune described her discussions with Pollak and explained, to the best of her recollection, how she calculated petitioner's plea offer. *See id.* at 62–84. She acknowledged making the offer, but conceded that she had difficulty recalling its details. *See id.* at 66–67. Moreover, she stated that she never had any direct discussions with petitioner regarding the plea offer. *See id.* at 90–91.

## DISCUSSION

### I. Petitioner's Claim

Petitioner's sole remaining claim alleges that, during the pretrial plea negotiation process, Pollak drastically underestimated petitioner's maximum potential sentencing exposure. According to petitioner, Pollak advised him that, if convicted, he would receive "a sentence of two to three years." Hearing Tr. at 17. Moreover, Pollak allegedly told his client that "if [he] was a good

person, behaved [him]self well in jail, the likelihood [was he] would only have one third of the time to do so." *Id.* at 18. In other words, had petitioner received the three-year sentence Pollak allegedly predicted, he would have only been incarcerated for twelve months. *See id.* Finally, according to petitioner's affidavit, counsel stated that petitioner "would continue to be at home release [sic] on bond during an appeal that could be taken in the event of a conviction." Pet. Aff. at ¶ 17.[1]

In fact, as he later discovered, petitioner was facing the possibility of a much more substantial prison term. Petitioner's actual maximum exposure under the relevant statutes, 18 U.S.C. §§ 1341 and 1343, was five years for each of the seven counts on which he was indicted, amounting to a total possible exposure of thirty-five years.[2] That exposure, and even the 78–month sentence this Court eventually imposed under the United States Sentencing Guidelines (the "Guidelines", or "U.S.S.G."), were both far greater than either the "two or three years" allegedly predicted by petitioner's counsel or the twelve-month maximum based on "good time"[3] that counsel also allegedly advised.

Petitioner asserts that, based on Pollak's alleged erroneous estimate, he decided to reject the Government's proposed plea offer of two years' imprisonment in late 1994.[4] *See id.* at 18–19. At the September 13, 1999 hearing, petitioner offered his version of his conversation with Pollak, in which Pollak allegedly advised him to reject the offer:

> Q: What did Mr. Pollak tell you was the plea offer that the [G]overnment had made to you?
>
> A: Two years in jail.
>
> Q: Did you have any further discussion with him about what had been said?

---

1. This advice regarding home release, if indeed given, was erroneous. Under 18 U.S.C. § 3143(b)(1), a defendant found guilty is to be detained pending appeal, "unless the judicial officer finds (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

2. As this Court recognized in its July 28, 1999 Order, although "the 'total punishment' may be difficult for counsel to predict at the time of plea negotiations, because a court may ultimately be permitted under Section 5.G1.2(d) of the Guidelines to impose a sentence up to the statutory maximum for each count consecutively, even in the complex regime of federal sentencing counsel needs to inform a client of the maximum sentence he may face under the applicable criminal statutes." *Slevin,* 1999 WL 549010, at *10 n.4 (citing *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (per curiam); *United States ex rel. Hill v. Ternullo,* 510 F.2d 844, 847 & n. 5 (2d Cir.1975)).

3. The current federal sentencing scheme (which was in effect at the time petitioner was tried, convicted, and sentenced) permits the Bureau of Prisons to credit only up to 54 days per year toward a prisoner's sentence because of his good behavior while incarcerated. *See* 18 U.S.C. 3624(b); *see also Slevin,* 1999 WL 549010, at *10 n. 5.

4. The Government does not deny making this plea offer, although former Assistant U.S. Attorney Susan Brune has characterized it as an offer of 24 to 30 months' imprisonment, *see* Hearing Tr. at 66–67, which would have corresponded to a Guidelines level of 17, *see id.* at 70. At the hearing, Brune testified that in late 1994, she discussed the possibility of a plea agreement with Pollak, first on the telephone, and later, "perhaps November of 1994," at a meeting in her office. Hearing Tr. at 66. Petitioner was not present for any of these discussions. *See id.* Although she was not sure of the specifics, Brune stated that she believes the offer was 24 to 30 months incarceration. *See id.* at 67, 71–72. She was sure, however, that the 24 months figure was the correct low side of the proposed sentence. *See id.* at 71–72. Finally, Brune stated that although there was some discussion regarding petitioner's cooperation, it was not of major interest to her at the time. *See id.* at 76.

A: I asked him is two years a normal intelligent plea offer when, as you told me, I am looking at two to three and you advised [me that a] first time criminal would get the lower end, does this make sense?

Q: What did he say?

A: And he said no, it doesn't, your exposure to going to trial is very, very limited.

\* \* \* \* \* \*

Q: Did he give you any recommendation as to whether you should accept or reject the plea offer?

A: He told me to reject the plea offer.

Petitioner further testified that, before deciding to go to trial, he discussed the offer with his wife and "looked at the risk exposure that was there." *Id.* at 19–20. He also stated unequivocally that, had he been adequately informed of his actual sentencing exposure, he would have accepted the Government's plea offer:

Q: If you had been told at the time by Mr. Pollak or someone on his behalf that the actual exposure, the jail exposure you might have after being convicted at trial would be in the range of six and a half years, would your decision to reject the plea offer have been different?

A: Of course it would have been. Exposure is much too great.

Q: What would your decision have been if you had been told that the reasonable sentence after conviction at trial would be six and a half years?

A: I would have opted to take the [G]overnment's plea agreement.

Q: Why?

A: Triple the time in jail, away from my family, my mother, numerous other

personal reasons would just say you have to be nuts to go not to jail for two years versus exposing yourself to six and a half years.

*Id.* at 20. This statement was corroborated by Mrs. Slevin, who stated that had they been aware of petitioner's actual sentencing exposure, she "would have insisted that he take the plea" because the couple had a young daughter who needed his care. *See id.* at 12.[5]

Following petitioner's rejection of the plea offer, the parties traveled to the Carribean to depose several witnesses. *See id.* at 78–81. Brune testified that she made clear to Pollak that petitioner's plea offer expired at the moment the Government made nonrefundable reservations for the trip. *See id.* at 81–82. Petitioner, however, maintains that Pollak never informed him that his time to consider the plea offer was restricted. *See* Pet. Mem. at 5.

The case proceeded to trial in June 1995, at which Pollak offered a meager defense. In response to "two carts worth of evidence and numerous witnesses" presented by the prosecution over seven days, Hearing Tr. at 20, Pollak called no witnesses and did not have petitioner testify before the jury, *see id.* at 21. Petitioner's entire defense consisted of Pollak's request that the Court take judicial notice of the laws of Anguilla. *See id.* On June 13, 1995, the jury deliberated for thirty minutes before finding petitioner guilty on all charges. *See id.* at 21, 95. Petitioner has been incarcerated ever since. *See id.* at 21.

## II. Analysis

■ The Supreme Court has articulated a two-pronged test to determine whether a criminal defendant received ineffective as-

---

5. Mrs. Slevin also attempted to confirm her husband's allegations regarding Pollak's advice. She testified, for example, that "Harry said that if the worst possible scenario [was that he] could get three years [in prison], so it didn't pay to take it." Hearing Tr. at 11. She also stated that there was some discus-

sion of a reduced sentence for "good time." *Id.* at 11–12. Mrs. Slevin acknowledged, however, that she had no personal knowledge of the discussions between Pollak and her husband, as she was not present for any of their consultations. *See id.* at 13–14.

sistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 688–90, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance, a *habeas* petitioner must show: "(1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998) (per curiam).

In *Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court extended the application of the *Strickland* test to claims of ineffective assistance of counsel arising out of the plea negotiation process. *Hill* established that a defendant who is represented by counsel retains the right to make his own reasonably informed decision to accept or reject a plea offer. *See id.* at 56, 106 S.Ct. 366; *see also Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) ("[P]rior to trial an accused is entitled to rely on his counsel ... to offer his informed opinion as to what plea should be entered."). The Second Circuit has stressed that " '[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel may and *must* give the client the benefit of counsel's professional advice on this crucial decision.' " *Gordon,* 156 F.3d at 380 (quoting *Boria v. Keane,* 99 F.3d 492, 496–97 (1996) (quoting Anthony G. Amsterdam, *Trial Manual 5 for the Defense of Criminal Cases* § 201, at 339)) (emphasis, alterations, and omission in original). Therefore, "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boria,* 99 F.3d at 496 (quoting ABA Model Code of Prof. Responsibility, Ethical Consideration 7–7 (1992)).

## A. Deficiency of Pollak's Performance

### 1. Standard of Review

To satisfy the first prong of the *Strickland* test, a *habeas* petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In determining what is reasonable, the Court may look to prevailing norms of professional practice, *see id.,* but must evaluate counsel's conduct based "on the facts of the particular case, viewed as of the time of counsel's conduct," *id.* at 690, 104 S.Ct. 2052. Yet, because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of a defense attorney's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. 2052. As such, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Applying this first prong of the *Strickland* test to the plea context, the Second Circuit has observed that " '[k]nowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.' " *Gordon,* 156 F.3d at 380 (quoting *United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992)) (alteration in original). Accordingly, a defense lawyer must explain to his client the maximum sentencing exposure she would face were she to elect to go to trial. *See Gordon,* 156 F.3d at 380. Counsel need not provide his client with an estimate of the probable sentencing range that would be applied under the Guidelines, *see United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989); *Figueroa v. United States,* No. 91 Civ. 1047, 1993 WL 88213, at *3 (S.D.N.Y. Mar.24, 1993), but should, however, explain the maximum and minimum statutory penalties applicable to the charges the client faces, *see Sweeney,* 878 F.2d at 70; *United States ex rel. Hill v. Ternullo,* 510 F.2d 844, 847 & n. 5 (2d

Cir.1975); *Charris v. Artuz,* 32 F.Supp.2d 139, 142 (S.D.N.Y.1998).

As this Court recognized in its July 28, 1999 Order, a patently inaccurate prediction about a defendant's potential Guidelines sentence may contribute to a finding of ineffective assistance. *See Slevin,* 1999 WL 549010, at *10 (citing *Gordon* 380–81; *Day,* 969 F.2d at 44). *But cf. Day,* 969 F.2d at 44 ("We do not suggest that . . . counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines."). Although the Guidelines are complex, it is the defense attorney's duty to explain their application to her client.

Petitioner's claims mirror the allegations set forth in *Boria* and *Gordon,* both cases in which the Second Circuit granted the petitioner's *habeas* motion. In *Boria,* the petitioner, having rejected a plea offer from the district attorney that would have resulted in a sentence of one to three years, had been sentenced to twenty years to life imprisonment. At the petitioner's evidentiary hearing, however, his former defense attorney testified that he "had not in any way or at any time discussed with the petitioner the advisability of accepting or rejecting the offered plea" notwithstanding the fact that, "although he never even suggested such a thought to the petitioner, it was his own view that his client's decision to reject the plea bargain was suicidal." *Boria,* 99 F.3d at 496. The Second Circuit declared that "it would be impossible to imagine a clearer case of a lawyer depriving a client of constitutionally required advice." *Id.* at 497.

Similarly, in *Gordon,* the petitioner, after discussing the possibility of entering a guilty plea with the U.S. Attorney's office, had elected to proceed to trial, allegedly as a result of his attorney's gross underestimate of his maximum sentencing exposure under the Guidelines. The faulty prediction had been well documented: Prior to trial, petitioner's counsel had written a letter to his client expressing his belief that a conviction under the indictment would result in a sentence of 120 months' imprisonment. *See Gordon,* 156 F.3d at 377. At a pretrial conference one month later, the attorney had informed the district court that the plea offer would expose his client to a sentence of 84 months and stated that he had discussed the Government's plea offer with his client, but that his client would not accept it. *See id.* Notwithstanding counsel's prediction, however, after being found guilty on all counts, Gordon was sentenced to 210 months' imprisonment. *See id.* at 378. The Second Circuit upheld the district court's decision granting Gordon's § 2255 motion, concluding that "[b]y grossly underestimating Gordon's sentencing exposure in a letter to his client, [counsel] breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable.' " *Id.* at 380 (quoting *Boria,* 99 F.3d at 496).

## 2. Petitioner's Evidence Does Not Establish Deficient Performance

█ Petitioner's allegations, if true, clearly meet the standard for relief set forth in *Boria* and *Gordon.* According to petitioner and his wife, Pollak informed petitioner that the Government had extended a plea offer that petitioner allegedly believed would have decreased his sentencing exposure by no more than one year (a three-year predicted maximum compared with the two-year offer), and perhaps as little as four months (a one-year predicted maximum compared to an eight-month sentence under plea agreement, when accounting for supposed two-thirds "good time" reductions). From such a perspective, "trial would have seemed a virtual no-risk opportunity to petitioner." *Slevin,* 1999 WL 549010, at *12. If Pollak did indeed leave his client with such an impression, his performance was indeed deficient. Moreover, as this Court stated in its July 28, 1999 Order, "[i]f petitioner in fact had such an impression, the Court would have little difficulty finding that a 'reasonable probability' ex-

ists that the outcome of his case would have been different had he been properly counseled." *Id.* (citing *Gordon,* 156 F.3d at 379).

■ Nevertheless, having heard all the evidence, this Court does not find petitioner's allegations to be credible. *Cf. Loper v. Beto,* 405 U.S. 473, 502, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (Rehnquist, J., dissenting) ("[T]he finder of fact is entitled to wholly disbelieve the testimony of an interested witness.") (citing *NLRB v. Pittsburgh S.S. Co.,* 337 U.S. 656, 659, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949)). Aside from the testimony of his wife, whose potential for bias cannot be ignored, petitioner has not offered any objective evidence that supports his assertions regarding the advice he allegedly received. Moreover, the circumstantial evidence contradicts many of petitioner's allegations. For these reasons, the Court cannot accept petitioner's version of the facts.

### a. Petitioner Offers No "Objective Evidence" to Support His Allegations

To establish a claim of ineffective assistance of counsel, a *habeas* petitioner must "overcome [a] strong presumption of attorney competence." *Kimmelman v. Morrison,* 477 U.S. 365, 383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Brown v. Doe,* 2 F.3d 1236, 1246 (1993). Consequently, petitioner bears a heavy burden of convincing this Court that Pollak did in fact misadvise him as to the desirability of a plea offer.[6]

■ It will always be extremely difficult for a *habeas* petitioner to convince a court that his counsel left him with a mistaken impression regarding his predicament. *See United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1098 (2d Cir.1972) ("[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea."); *see also Garcia v. United States,* 715 F.Supp. 1076, 1079 (S.D.Fla. 1989). As a result, federal district courts have often declined to credit the self-serving testimony of a *habeas* petitioner.[7] *See, e.g., United States v. Fay,* 219 F.Supp. 152, 156 (S.D.N.Y.1963) ("In evaluating the credibility of a *habeas corpus* petitioner[,] the court should be mindful of an admonition, applicable in all proceedings, concerning the trustworthiness of self-serving declarations."). For example, in *Siao–Pao v. Keane,* 878 F.Supp. 468, 472 (S.D.N.Y. 1995), the Court denied § 2254 relief, notwithstanding the petitioner's contention that his counsel had misinformed him as to which witnesses the state planned to call to testify against him, thereby prompting him to reject his plea offer. The court adopted the Magistrate Judge's conclusion that

> there is no evidence in the record contemporaneous or otherwise which corroborates this self-serving assertion by

---

6. This Court hesitates to believe petitioner's allegations in part because of its previously expressed respect for Pollak's legal abilities. At petitioner's sentencing, this Court noted its "high regard for defendant's lawyer in this case, Mr. Pollak," and told petitioner that "[h]e [was] fortunate to have an experienced lawyer [representing him]." Sentencing Tr. at 2. In light of the Court's praise of Pollak, many of petitioner's allegations, such as his claim that Pollak did not even own a copy of the Sentencing Guidelines, *see* Hearing Tr. at 32, seem rather dubious.

7. The Second Circuit has invariably affirmed a trial judge's right to discount a *habeas* peti-

tioner's uncorroborated, self-serving testimony. *See, e.g., Williams v. United States,* 481 F.2d 339, 346 (2d Cir.1973); *United States v. Follette,* 416 F.2d 156, 163–64 (2d Cir.1969); *see also United States v. Yarmoluk,* 993 F.Supp. 206, 209 n. 2 (S.D.N.Y.1998) ("Self-serving speculations, hearsay, and other inadmissible evidence in the affidavits must be disregarded."); *Paulino v. United States,* 964 F.Supp. 119, 125 n. 2 (S.D.N.Y.1997) (discrediting *habeas* petitioner's affidavit alleging ineffective assistance in part based on his failure to submit a supporting affidavit from counsel).

petitioner regarding what he was told and what influence it had on his decision. He does include letters from his appellate counsel in the state court which point out that if he were to succeed in challenging his guilty plea, he might be found guilty at trial in part because the testimony of [his co-conspirator] would presumably be highly damaging. This correspondence, of course, casts no light on what petitioner was told at the time of the plea or what influenced him to plead guilty.

*Id.* at 472; *see also Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991) (holding that petitioner's "bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer ... forbade him to take the stand" did not warrant an evidentiary hearing); *Chang v. United States,* No. 98–CV–7354, 1999 WL 439097, at \*2 (E.D.N.Y. May 3, 1999) ("Other than his own blanket statements, Change provides no proof that [his attorney] prevented him from testifying. '[I]n a subsequent attack on the conviction the defendant must produce something more than a bare, unsubstantiated ... self-serving allegation that his lawyer (in violation of professional standards) forbade him to take the stand.'") (quoting *United States v. Wiggins,* 971 F.Supp. 660, 663 (N.D.N.Y. 1997)). For the same reasons the court would not countenance Siao–Pao's bare allegations of ineffective assistance that supposedly induced him to plead guilty, this Court cannot lend credence to Slevin's claims regarding deficient performance that may have caused him to reject his plea offer.

This evidentiary prerequisite is consistent with *Boria* and *Gordon.* In both cases, the petitioners were able to present objective evidence substantiating their allegations of ineffective assistance. Specifically, in *Boria,* the petitioner's counsel testified at great length at the evidentiary hearing and "made clear" that he had never discussed with his client the advisability of accepting or rejecting the plea offer. *Boria,* 99 F.3d at 495. According to the Second Circuit, the ineffective assistance was "established beyond peradventure" thanks to counsel's "unequivocal" testimony. *Id.* at 497. Although counsel "sought to justify his conduct," *id.* at 496, because an admission of ineffective assistance from a defense attorney is clearly contrary to his own personal and professional interests,[8] it deserves significant weight. Furthermore, in *Gordon,* the petitioner submitted a letter from his trial counsel that confirmed counsel's underestimate of his client's sentencing exposure. *See Gordon,* 156 F.3d at 377; *see also Fogg v. Kernan,* No. C95–3581, 1998 WL 470470, at \*8 (N.D.Cal. Aug.7, 1998) ("[W]hile trial counsel's ... letter to [the petitioner] is not by itself probative, it certainly implies that trial counsel did not have a grasp on the details of the plea agreement.... This letter therefore strongly suggests that trial counsel's advice about the plea agreement was steeped more in uninformed con-

---

8. This Court assumes that the Second Circuit's finding that "it would be impossible to imagine a clearer case of a lawyer depriving a client of constitutionally required advice" did not boost Boria's attorney's standing in the legal community. *Boria,* 99 F.3d at 497. Other courts have recognized the enhanced reliability of testimony from a *habeas* petitioner's former counsel suggesting that he or she provided ineffective assistance, as such testimony would tend to diminish his or her professional reputation. *See, e.g., Paters v. U.S.,* 159 F.3d 1043, 1056–58 (7th Cir.1998) (Coffey, J., dissenting and concurring) ("Charges of attorney incompetence are far from a trivial matter for legal counsel. 'Pro-

fessional reputation' is an attorney's lifeblood, and the stigma of a published finding of incompetence is obviously harmful to a legal career."); *Day,* 969 F.2d at 46 n. 9 (recognizing that "incompetent lawyers risk disciplinary action, malpractice suits, and consequent loss of business"); *Alvernaz v. Ratelle,* 831 F.Supp. 790, 794 (S.D.Cal.1993) ("[Petitioner's attorney's] statements are entitled to heightened credibility because the very statements that are beneficial to Petitioner are harmful to [his attorney's] own professional reputation. Consequently, [his attorney's] testimony is further objective evidence that Petitioner was prejudiced.").

fusion than in cunning strategy."). Thus, it is undisputable that in both *Boria* and *Gordon,* the petitioners' evidence was far more credible than Slevin's testimony.

 It should also be noted that the Second Circuit has held that a *habeas* petitioner's failure to submit an affidavit from his trial counsel corroborating his allegations of ineffective assistance provides sufficient justification to dismiss a petition to vacate a guilty plea. *See United States v. Santelises,* 476 F.2d 787, 790 n. 3 (2d Cir. 1973); *see also United States v. Welton,* 439 F.2d 824, 826 (2d Cir.1971). Although in this case petitioner's counsel has recently passed away,[9] and thus holding petitioner to such a requirement would be manifestly unfair under the circumstances, *cf. Welton,* 439 F.2d at 826 (noting that, alternatively, a defendant may submit "his own affidavit giving a satisfactory explanation of why he cannot submit an affidavit from his attorney"), the reasoning behind such a requirement is obvious. A convicted defendant faces tremendous incentives to fabricate allegations of misconduct in an attempt to avoid incarceration. Therefore,

9. Petitioner cannot produce an affidavit from Pollak either corroborating or disputing his allegations because Pollak passed away at some point before petitioner was informed that this Court had granted his request for an evidentiary hearing. *See* Pet Mem. at 2. However, although petitioner did not raise this issue in his post-hearing memorandum, the Court must note that while it may represent a hardship to petitioner, the intervening death of a *habeas* petitioner's trial attorney does not excuse a petitioner's inability to produce "objective evidence" in support of his allegations. Rather, under Rule 9(a) of the Rules Governing § 2255 Cases (and the practically identical Rule 9(a) of the Rules Governing § 2254 Cases), courts have held that the fact that a petitioner's trial counsel is deceased may in fact prejudice the Government's ability to respond to the petitioner's claims. *See, e.g., Honeycutt v. Ward,* 612 F.2d 36, 41–43 (2d Cir.1979) (dismissing § 2254 petition where, after petitioner waited thirty years after his trial to file his petition, the state could not locate the judge or defense counsel to substantiate the petitioner's testimony); *Hodge v. Walker,* No. 95 Civ. 2873(PKL), 1996 WL 363181, at *3 (notifying petitioner that his

in the absence of objective evidence, this Court will not reward such "bare allegations," particularly in light of their source. *Korenfeld v. United States,* 451 F.2d 770, 775 (2d Cir.1971).

### b. The Circumstantial Evidence Contradicts Petitioner's Assertions

Not only is petitioner unable to satisfy his evidentiary burden, the circumstantial evidence surrounding petitioner's allegations belies his claims of ineffective assistance. Though not entirely disproving his contentions, petitioner's version of the events, his failure to raise these allegations earlier, and his reputation for lack of credibility render his story highly suspect.

First, petitioner's assertions that Pollak repeated, on various occasions over a sixteen-month period, the same underestimate of his potential sentencing exposure raise suspicion. Significantly, petitioner claims that Pollak first gave this erroneous advice prior to the time the Government filed an indictment in August 1994. *See* Pet. Aff. at 4, ¶ 9; Hearing Tr. at 16, 24. Yet, at that time, Pollak could not have

petition would be dismissed if the state could demonstrate that petitioner's delay in filing prejudiced its ability to respond to his allegations, where petitioner's trial and sentencing counsel were both deceased); *Norris v. Lefevre,* No. 82 Civ. 0614, 1982 WL 3107, at *5 (finding prejudice to the state where petitioner's trial attorney, the trial judge, and the prosecuting attorney were all deceased).

While the Court recognizes that the aforementioned cases are distinguishable from the instant action on various grounds—most notably, the fact that in this case there was little, if any, delay in filing the § 2255 motion that could be attributed to petitioner—and although Rule 9(a), which requires the Government to show "undue delay," may be obsolete in light of the recently-enacted one-year statute of limitations on § 2255 petitions, *see* 28 U.S.C. § 2255, the principle remains applicable. While unfortunate, because the death of a petitioner's trial counsel is just as, if not more, likely to prejudice the respondent, it does not relieve the petitioner of his "heavy burden" of proving ineffective assistance. *United States v. Diaz,* 176 F.3d 52, 112 (2d Cir.1999).

had any knowledge of what charges his client was facing, as Brune had not yet discussed with Pollak the substance of the criminal investigation. Petitioner would have the Court believe that Pollak pulled his prediction of "two to three years" out of thin air. In addition, petitioner maintains that even after the Government made its plea offer in late 1994, Pollak reiterated his conclusion that petitioner faced only "two to three years" in prison and advised him to reject the offer. Brune testified, however, that at her meeting with Pollak she undertook a detailed analysis of the Sentencing Guidelines to show Pollak how she calculated petitioner's offense level. She further explained that petitioner would be facing significant sentence enhancements, and thus an offense level in excess of 22 upon conviction, were he to reject the offer. *See* Hearing Tr. at 67–73, 83–84. Petitioner's claim effectively requires the Court to find that Pollak completely rejected this analysis in relating Brune's plea offer to petitioner. Finally, petitioner contends that Pollak persisted with his estimate "[r]ight up to the moment of sentencing." *Id.* at 32. Again, Pollak would have had to have ignored the conclusion of the presentence report, which recommended a Guidelines range of 63 to 78 months, to advance such an assertion.

The more instances of improper advice petitioner cites, the more his claim defies belief. *Cf. United States v. Allied Stevedoring Corp.*, 241 F.2d 925, 933 (2d Cir. 1957) ("Again and again in all sorts of situations we become satisfied, even without earlier contradiction, not only that a [witness's] denial is false, but that the truth is the opposite . . . ."). The Court cannot believe that Pollak would have persisted with his erroneous prediction at each stage of the prosecution and sentencing in light of the evidence suggesting that he should have known better.

■ Second, petitioner's failure to raise his claims earlier renders his claim—though not procedurally barred [10]—rather suspicious. The Government notes that, prior to filing his § 2255 motion, petitioner "never mentioned the alleged advice regarding his sentencing exposure" despite demonstrating a willingness to "object[ ] to each and every relevant consideration for sentencing" [11] and an ability to cite every instance of attorney incompetence during his attempt to remove Pollak as his appellate counsel. Resp. Mem. at 8. In contrast to *Gordon,* in which the defendant's lawyer, upon reading the presentence report, *immediately* informed the court that he had mistakenly advised his client regarding his sentencing exposure, *see Gordon,* 156 F.3d at 377, neither Slevin nor Pollak

10. In general, if a defendant fails to raise a claim on direct appeal, he will be procedurally barred from raising such a claim in a subsequent § 2255 petition, unless he can show both "cause" for failing to raise the issue on appeal and "actual prejudice" resulting from the violation about which she complains. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Riascos–Prado v. United States,* 66 F.3d 30, 33 (2d Cir.1995). Claims of ineffective assistance of counsel, however, may be raised for the first time in a § 2255 petition, unless (1) the petitioner had new counsel on appeal, and (2) the claim is based solely on the record developed at trial. *See Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir. 1993). The rationale for this exception is that "when a defendant is represented on appeal by the same attorney who represented him on the trial, the attorney is not inclined to seek

out and assert his own prior ineffectiveness." *Abbamonte v. United States,* 160 F.3d 922, 925 (2d Cir.1998).

11. In response to the presentence report, petitioner submitted a 29–page handwritten response in which he detailed alleged inaccuracies in the report and objected to each of the Guidelines calculations. *See* Resp. Mem. at 9, Ex. 2. Petitioner also filed a motion for a downward departure, *see* Hearing Tr. at 42–43, as well as a motion requesting a *Fatico* hearing with respect to loss amount calculations, *see* Resp. Mem. at 9, Ex. 3. In addition, petitioner spoke on his own behalf at sentencing. *See* Sentencing Tr. at 44–46. Hence, the evidence demonstrates that petitioner was both willing and able to address his concerns to the Court.

brought Pollak's underestimate to this Court's attention until Slevin filed his § 2255 petition. In the numerous submissions he filed with the Court—including a motion to replace Pollak as appellate counsel that enumerated eleven different areas of contention with Pollak's representation—petitioner never once raised any issue related to Pollak's plea advice. *See Moses*, 1999 WL 195675, at *2; *Williams v. United States*, 13 F.Supp.2d 616, 620 (E.D.Mich.1998); *see also Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 62–63 (2d Cir.1996) (denying *habeas* relief because the petitioner failed to meet his burden of showing that his attorney pursued an insanity defense over his objections where petitioner, who "took an active role in his defense" and "was not incapable of making known his views," "remained silent" during the relevant testimony).

Finally, petitioner's own testimony and sworn statements demonstrate his lack of credibility. Most notably, the very nature of his offenses evidences his propensity to deceive and manipulate for his own benefit. *Cf.* Fed.R.Evid. 609(a)(2) (allowing the admission of evidence of prior conviction of a crime involving dishonesty or false statements, for the purpose of impeaching the witness). Moreover, since his conviction, petitioner has submitted several sworn statements that reflect his aversion to the truth. For example, on November 25, 1995, petitioner moved this Court for a *Fatico* hearing at sentencing because, he maintained, Pollak had refused to request an evidentiary hearing despite his urging. *See* Hearing Tr. at 43–44; Resp. Mem. at Ex. 3. This claim, however, was clearly false, as evidenced by Pollak's sentencing letter of May 15, 1995, in which he specifically requested such a hearing. *See* Resp. Mem. at Ex. 5. Finally, petitioner's testimony at the September 13, 1999 hearing is occasionally refuted by the record. For

instance, petitioner testified that Pollak failed to move for his release on bail pending appeal.[12] *See* Hearing Tr. at 30–31. The trial transcript, however, clearly shows that Pollak sought a bail hearing, though Judge DiCarlo denied the request. *See* Trial Tr. at 927–28.

Accordingly, because petitioner's claims are based solely on the self-serving testimony of petitioner and his wife, and because the circumstantial evidence contradicts many of his allegations, the Court finds that petitioner has not overcome the "strong presumption of attorney competence." *Kimmelman*, 477 U.S. at 383, 106 S.Ct. 2574. Therefore, the Court cannot conclude that petitioner received ineffective assistance of counsel.

## B. "Reasonable Probability" that the Outcome Would Have Been Different

Even assuming, *arguendo*, that petitioner could demonstrate that Pollak's performance was deficient, he cannot establish that Pollak's allegedly erroneous advice caused him prejudice. Because petitioner has offered no "objective evidence" tending to show that, in the absence of such advice, he would have accepted the plea offer, petitioner's claims must fail.

### 1. Standard of Review

■ Under the second prong of the *Strickland* test, a *habeas* petitioner must demonstrate a "reasonable probability" that but for counsel's errors in considering or explaining a plea offer, he would have accepted the offer. *See Boria*, 99 F.3d at 497. To satisfy this requirement, a petitioner must first assert in his affidavit that had it not been for counsel's allegedly erroneous advice, he would have accepted the plea. *See Hill*, 474 U.S. at 60, 106 S.Ct. 366 (denying petitioner relief be-

---

12. Petitioner made similar allegations in his affidavit accompanying his § 2255 petition. *See* Pet. Aff. at 8, ¶ 19 (stating that his "unease was compounded by [his] attorney's failure to even *ask* the court for the continuation of the bond he'd told me for months wouldn't be a problem") (emphasis in original).

cause he failed to allege that had counsel's advice on plea offer been accurate, he would not have pleaded guilty); *see also Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991) (declining to find prejudice because "[petitioner] never states that he would have accepted the plea" where petitioner's memorandum of law merely stated that petitioner "would have to have been insane not to accept the plea agreement for the minimum sentence"); *Brown v. United States*, No. 95 Civ. 4368, 1996 WL 479248, at *6 (S.D.N.Y. Aug.23, 1996) ("[Petitioner] does not even contend that, had his counsel acted differently, he would have chosen not to plead guilty and, instead, would have gone to trial."). Petitioner has satisfied this initial burden by repeatedly stating that he would have accepted the Government's plea offer had his counsel's estimation of his sentencing exposure been accurate. *See* Pet. Aff. at ¶ 30; Hearing Tr. at 20; Pet. Mem. at 8.

Such a statement, however, while necessary to establish prejudice, is not sufficient under *Strickland*. The Second Circuit has recently endorsed the Seventh Circuit's requirement that a petitioner present "objective evidence" beyond his own "self-serving, post-conviction testimony" that demonstrates a "reasonable probability" that he would have accepted the plea offer. *See Gordon*, 156 F.3d at 380–81; *see also Toro*, 940 F.2d at 1068 ("[Petitioner's] statement is self-serving and alone, insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea."); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.1991) ("[Petitioner] cites no evi-

dence to indicate that prior to his conviction he expressed any desire to plead guilty."). The Second Circuit, however, requires minimal "objective evidence" to support such a conclusion. In *Gordon*, for example, the Second Circuit determined that evidence of "a great disparity" between a defendant's actual maximum sentencing exposure under the Guidelines and the sentencing exposure represented by his attorney was sufficiently "objective" to establish a "reasonable probability" that he would have accepted the plea offer. *See Gordon*, 156 F.3d at 381.[13]

■ In its July 28, 1999 Opinion, this Court observed that *Gordon* did not confine what might constitute "objective evidence" to the disparity between the high end of the Guidelines range calculated by the sentencing court and the maximum exposure predicted by counsel. Indeed, "it would be inconsistent to use only the Guidelines sentence determination, and not also the statutory maximum, as a potential baseline of comparison." *Slevin*, 1999 WL 549010, at *11. This Court concluded, therefore, that any disparity, if proven, between the statutory maximum and the possible sentencing exposure advised by counsel should also count as "objective evidence." *See id.* at *11–*12.[14] Therefore, were petitioner able to demonstrate that Pollak did in fact provide such erroneous advice, the Court would assume a "reasonable probability" that he would have accepted the Government's offer.

Although it did not couch its decision in such terms, the decision in *Boria* also re-

13. The disparity in *Gordon* between counsel's prediction and the maximum sentence under the Guidelines range determined by the district court was 142 months (a maximum of 262 months under the Guidelines, as compared to a maximum of 120 months advised by counsel). *See Gordon*, 156 F.3d at 377–78.

14. In the instant case, the possible disparities range considerably, from 384 months (420-month statutory maximum, as compared to 36-month maximum advised by counsel) to 42 months (78-month maximum under

Guidelines range calculated at sentencing hearing, as compared to 36 months advised by counsel). *See Slevin*, 1999 WL 549010, at *12. The Court's July 28, 1999 Opinion held that "[e]ach of these disparities—the least of which represents four years in prison more than petitioner allegedly believed he faced by going to trial—would constitute 'objective evidence' that petitioner would have accepted the plea offer, and would, therefore, each support a finding of prejudice under the second prong of *Strickland.*" *Id.*

lied on "objective evidence" suggesting that had the petitioner received proper advice, there would have been a reasonable probability that he would have pleaded guilty. First, Boria's trial counsel testified "unequivocally" that he "never gave his client any advice or suggestion" as to how to deal with the plea bargain. *See Boria,* 99 F.3d at 497–98. Second, the petitioner's father—who had procured and paid the attorney and signed the retainer agreement, but apparently also never received any advice with respect to the plea offer—swore under oath that had the attorney offered his opinion that declining the plea offer was a suicidal course, he would have "organized the family to persuade petitioner not to pursue the suicidal course he seemed bent upon following." *See id.* at 497. This evidence, the Second Circuit held, was enough to "not long detain [the panel]" from finding that the petitioner had suffered prejudice due to ineffective assistance.

## 2. Petitioner Has Not Offered "Objective Evidence" of Prejudice

However, just as this Court cannot conclude that Pollak's performance was deficient based solely on suspect testimony from petitioner and his wife, neither will the Court find prejudice based on such statements. In every case in this Circuit where a court has found a "reasonable probability" that the defendant would have accepted a plea offer had he not received ineffective assistance of counsel, the finding has been supported by admissible, credible evidence beyond the self-serving testimony of a petitioner faced with the prospect of further imprisonment.[15] In *Gordon,* for example, the petitioner actually proved the existence of a "great dispari-

15. This Court is unaware of any reported decision in which a federal court granted *habeas* relief to a petitioner alleging ineffective assistance of counsel based solely on the petitioner's self-serving accusations of deficient performance and resulting prejudice. *See, e.g., Moses v. United States,* 175 F.3d 1025, 1999 WL 195675, at *1 (8th Cir. Apr.2, 1999) ("[Petitioner] has not presented any nonconclusory, credible evidence supporting his prejudice claim. Instead, [petitioner] offers only his own self-serving statements made in his pro se § 2255 motion and brief that he would have accepted the plea agreement had his counsel explained [the consequences petitioner was facing]."); *Green v. Johnson,* 46 F.Supp.2d 614, 623 n. 14 (N.D.Tex.1999) (denying *habeas* relief where "there is no evidence other than [the petitioner's] self-serving affidavit in support of his *habeas* petition that he would have accepted the plea bargain"); *Golden v. United States,* 35 F.Supp.2d 664, 667–69 (N.D.Ind.1999) (denying *habeas* relief, notwithstanding a letter from counsel to client that allegedly miscalculated the sentencing exposure and contained typographical errors that rendered the advice confusing); *Gonzalez v. Green Haven Correctional Facility,* No. 85 Civ. 3775, 1986 WL 1194, at *4 (S.D.N.Y. Jan.17, 1986) (holding that testimony regarding a petitioner's subjective impressions regarding the desirability of a plea agreement is insufficient to justify vacating a guilty plea, "in the total absence of substantial objective proof reasonably justifying the impression"). The peti-

tioner must provide at least some credible and admissible evidence that supports his or her allegations of a Sixth Amendment violation. *See, e.g., Paters,* 159 F.3d at 1047–48 (granting an evidentiary hearing on petitioner's ineffective assistance claim where petitioner's parents averred that they "personally attended pre-plea offer conferences" in which defense counsel stated that petitioner's sentence could not exceed five years); *Turner v. Tennessee,* 858 F.2d 1201, 1206–07 (6th Cir. 1988) (discounting petitioner's own testimony that he would have taken the plea offer if he had been advised to do so, but finding sufficient objective evidence to establish prejudice based on the defendant's counteroffer of a one-year plea agreement in response to a two-year proposal), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989); *Wanatee v. Ault,* 39 F.Supp.2d 1164, 1174–75 (N.D.Iowa 1999) (granting an evidentiary hearing where there was "uncontroverted evidence from trial counsel himself" that he failed to inform his client about the felony murder rule); *Mask v. McGinnis,* 28 F.Supp.2d 122, 126 (S.D.N.Y.1998) (granting relief where the prosecutor testified that but for counsel's failure to inform the prosecutor was not a persistent violent felony offender, the prosecutor would have been willing to offer a more favorable plea); *see also United States v. Day,* 969 F.2d 39, 45–46 (3d Cir. 1992) (remanding for an evidentiary hearing and stating that a defense attorney's corroboration "might qualify as sufficient confirming evidence").

ty" between his actual Guidelines exposure and his attorney's prediction by producing the letter from his attorney that relayed the erroneous advice. *See Gordon,* 156 F.3d at 377. In contrast, Slevin has no supporting documentation to confirm his allegations. Similarly, the *Boria* Court considered corroborating testimony from both the petitioner's father and the attorney himself regarding the attorney's failure to provide advice. *See Boria,* 99 F.3d at 497. Slevin, however, offered only the testimony of his wife, who had no direct knowledge of any conversation between Pollak and Slevin, since she was not present for any of the discussions. *See* Hearing Tr. at 12–14; *see also Paters v. United States,* 159 F.3d 1043, 1047 n. 5 (7th Cir. 1998) (holding that affidavits from the petitioner's parents stating that the petitioner received a plea offer and seriously considered it "do not reflect personal knowledge on the part of the parents, but merely relate naked allegations of [petitioner] himself" and therefore "fall short of being objective evidence"). Her testimony is based only on what petitioner told her was said, *see* Hearing Tr. at 14, and would therefore be inadmissible to prove the truth of his allegation under the Federal Rules of Evidence, *see* Fed.R.Evid. 801(c), 802. *But cf.* Fed.R.Evid. 803(3) (allowing such testimony regarding "the declarant's then-existing state of mind," but not "to prove ... the fact believed"). Of course, the bias inherent in her testimony requires no explanation.

The Second Circuit has warned district courts to discount such conclusory, after-the-fact allegations of prejudice from *habeas* petitioners. As the Court of Appeals noted in *Panuccio v. Kelly,* 927 F.2d 106, 109 (2d Cir.1991), "this prong of the inquiry is not satisfied merely by [a defendant's] testimony that he would have gone to trial had he known of the defense, ... since a defendant's testimony after the fact 'suffers from obvious credibility problems.'" (quoting *Hooper v. Garraghty,* 845 F.2d 471, 475 (4th Cir.1988)). Accordingly, "in the absence of objective evidence of corroboratory circumstances," a petitioner's claims that he would have made some decision but for ineffective assistance of counsel are "generally to 'be viewed with some suspicion.'" *United States v. Navarrete,* 113 F.3d 1230, 1997 WL 265249, at *3 (2d Cir. May 20, 1997) (quoting *United States v. Wisniewski,* 478 F.2d 274, 284 (2d Cir.1973)). If the petitioner is unable to submit any evidence, other than his self-serving testimony, that he would have accepted the Government's plea offer were it not for his attorney's advice, the Court cannot find that he suffered prejudice as a result. *Cf. Singh v. Kuhlmann,* No. 94 Civ. 2213, 1995 WL 870113 (S.D.N.Y. Aug. 25, 1995) ("[Petitioner] has submitted no evidence, other than his own self-serving testimony, that he would have gone to trial if not for [his attorney's] advice ....").

Additionally, petitioner's state of mind, both at the time of his trial and even today, reveals his unwillingness to admit his guilt and hence the unlikelihood that he would have accepted the Government's plea offer. In order for a court to accept a guilty plea, the defendant must allocute to each of the elements of each of the charges to the court's satisfaction. *See* Fed.R.Crim.P. 11(f); *United States v. Smith,* 160 F.3d 117, 123 (2d Cir.1998). In petitioner's case, the record is clear that petitioner could not have allocuted to the required element of intent to defraud. For example, at his sentencing, petitioner submitted to this Court a document, misleadingly entitled "Acceptance of Responsibility," in which he stated that "[i]t was never my intention in my business affairs to damage anyone." *See* Habeas Tr. at 56 & Resp. Ex. 5. This Court recognized the contradiction, finding petitioner's request to be

> a selected acceptance of responsibility under the circumstances where a defendant who is still arguing the merits of the case and his non-guilt. I have never had a case before where the defendant so vigorously is supporting his position,

and indeed apparently will do so on appeal, that he was wrongly convicted and wants to receive an acceptance of responsibility.

Sentencing Tr. at 33–34. Had petitioner taken this stance at a hypothetical plea allocution, this Court would not have accepted a guilty plea. *Cf. United States v. Torres–Echavarria,* 129 F.3d 692, 695 (2d Cir.1997) ("A trial judge is not required to accept every constitutionally valid (*i.e.,* knowing, voluntary and intelligent) guilty plea merely because a defendant wishes so to plead, and may reject a plea in the exercise of sound judicial discretion.").

In fact, petitioner continues to protest his innocence to this day. At his evidentiary hearing, petitioner agreed that he would be lying if he were to say that he intended to harm others in his business dealings. *See* Hearing Tr. at 57; *see also id.* at 59. He also insisted that he acted in good faith and made full disclosures with respect to the fraudulent bonds. *See id.* at 58–59. Thus, even when faced with an opportunity to convince the Court that he would have admitted his guilt in exchange for a lesser sentence, petitioner remains incapable of admitting to the essential elements required for a plea. *See Golden v. United States,* 35 F.Supp.2d 664, 669 (N.D.Ind.1999) (citing the petitioner's statements at a hearing during his trial to establish that the petitioner had been "unwilling to plead guilty at the time of trial despite counsel's advice to do so"); *United States v. Enigwe,* No. 92–00257, 1997 WL 430993, at *7 (E.D.Pa. July 16, 1997) (refusing to find petitioner's testimony that he would have pleaded guilty credible because his attorney "consistently testified that [petitioner] had always professed his innocence and had never been willing to even consider pleading guilty"); *United States v. Barber,* 808 F.Supp. 361, 379 (D.N.J.1992) ("[T]hroughout this entire course of events, Barber has maintained his innocence and refused to consider entering a guilty plea."), *aff'd mem.,* 998 F.2d 1005 (3d Cir.1993).

Consequently, petitioner has not established to this Court's satisfaction a "reasonable probability" that he would have accepted the Government's plea offer had he not allegedly received erroneous advice from Pollak. Because petitioner has failed to satisfy either prong of the *Strickland* test, his motion must be dismissed.

### III. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1), a § 2255 petitioner may not appeal a final order to the Court of Appeals unless "a circuit justice or judge issues a certificate of appealability." A court may not issue such a certificate unless the petitioner can demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The standard for issuing a certificate of appealability is the same as the standard for a certificate of probable cause, which was required prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. *See Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996), *overruled on other grounds, Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In describing the standard, the Second Circuit has explained that " 'the petitioner need not show that he should prevail on the merits. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.' " *Nelson v. Walker,* 121 F.3d 828, 832 (2d Cir.1997) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)) (emphasis and alteration in original). In the instant case, the parties vigorously dispute whether petitioner received the alleged erroneous advice and whether, in the absence of such advice, petitioner would have accepted the Government's plea offer. Accordingly, these questions appear to be "debatable among jurists of reason." *Id.* Moreover, the issue of what sort of "objec-

tive evidence" is required to satisfy both prongs of the *Strickland* test is indeed "adequate to deserve encouragement to proceed further." *Id.* Therefore, the Court shall grant a certificate of appealability.

Finally, pursuant to 28 U.S.C. § 2253(c)(3), the certificate shall be limited to the issues addressed in this Opinion and Order, *i.e.,* (1) whether Pollak provided ineffective assistance in advising petitioner with respect to the Government's plea offer; and (2) whether there is a reasonable probability that, but for counsel's allegedly erroneous advice, petitioner would have accepted the offer.

## CONCLUSION

For the reasons stated above, petitioner's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 is HEREBY DENIED in its entirety. The Court shall GRANT petitioner a certificate of appealability, however, limited to the issues enumerated above. The Clerk of the Court shall enter judgment accordingly and notify petitioner of his right to appeal.

**SO ORDERED.**